HENRY BECKWITH, et al. Commissioners, etc., Appellants, *v.* HARVEY WHALEN, Commissioner, etc., Respondent

As to whether, where two towns are divided by a stream, a bridge over which would connect a highway existing in each of the towns, an implied liability upon the towns to erect the bridge at joint expense is created, *quære.*

No such joint liability exists, unless there is at the time a lawful highway in each town, which would be connected by, and of which the bridge would form a part.

The mere fact that a highway has been laid out is not sufficient; there must be an existing thoroughfare, suitable for travel.

In 1858, a highway was laid out in the town of P., to the centre of I. creek, which divided that town from the town of B. Between the creek and the highland was a marsh 200 feet wide which was a portion of the year covered with water, and was impassable for teams. No work was ever done on the portion of the highway passing through the marsh, nor was it ever used as a highway. Some work was done on

the residue of the highway, as laid out. In an action by the authorities of the town of B. to compel the town of P. to pay half the expense of a bridge, constructed over the creek in 1869, *held,* that the highway in the town of P. was not " opened and worked " within six years after 1858, within the meaning of the statute (1 R. S., 520, § 99, as amended by chap. 311, Laws of 1861), and therefore it had ceased to be a highway, for any purpose, at the time the bridge was built; and that there being no lawful highway in the town of P., with which the bridge connected, that town was not liable.

A highway cannot be said to be opened and worked, within the meaning of said statute, unless it is passable for public travel for its entire length.

As to whether, when a part of a highway is opened and worked, within six years after it is laid out, so as to be passable and the residue is not, the whole road ceases to be a highway, or whether that part which has been opened and worked, will remain a highway, *quære.*

*Marble* v. *Whitney* (28 N. Y., 297 ; *Beckwith* v. *Whalen* (65 N. Y., 322) distinguished.

(Argued June 12, 1877; decided September 18, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order denying a motion for a new trial and directing judgment on a nonsuit. (Reported below, 9 Hun, 408.)

The case, upon a former appeal, is reported in 65 N. Y., 322.

This action was brought by plaintiffs as commissioners of highways of the town of Brighton, in the county of Monroe, to recover of the defendant, as commissioner of highways of the town of Penfield, in the same county, one-half of the expense of building a bridge across Irondequoit creek, which separates the two towns.

The commissioners of Penfield refused to unite in erecting the bridge across said stream, or to contribute to the expense or recognize any liability of his town to aid in the construction of a bridge across said stream. The plaintiffs had taken all the steps required to be taken by chapter 225 of the Laws of 1841, as amended by chapter 383 of the Laws of 1857, in order to compel the town of Penfield to pay its proportion of the cost of erecting the bridge, if it was legally liable to contribute to pay the expense thereof.

In 1858, a highway was duly laid out by the commissioners of the town of Penfield, from a highway in said town, known as the old Dugway road, to the center of Irondequoit creek. Part of this road was opened and worked, but for a distance of 200 feet, easterly from the creek, the road as laid out ran over a marsh, which is overflowed to the depth of several feet in high water, so that it could not be traveled over by teams except in the dryest weather, it was never used as a highway, and it did not appear that teams ever did or could pass over it. No work was ever done upon this marsh. It was proved that the road had been opened and partially worked from the old Dugway road, the place of the commencement of the road in question, to the eastern margin of the marsh in Penfield.

In 1858, a road was laid out in the town of Brighton, extending from "Cousins," so called, to the center of said creek, at the terminus of the above mentioned road in Penfield. This road ran for a part of the distance over a marsh. The commissioners of highways, at the time of building the bridge in question, or soon after, constructed trestle work from the Brighton end of the bridge, westerly to the highland over which the road was laid out, thereby enabling teams to pass over the marshy ground, and afforded a passage for the water of the creek to pass through in high water. When the commissioners of Brighton built the bridge across the creek, they did nothing to make a road across the marsh on the Penfield side of the creek, but left it as they found it and as it had been for many years.

At the close of the evidence the defendant's counsel moved for a nonsuit on the following grounds, amongst others, to wit: First, that the testimony does not show a highway has been actually opened and worked and traveled upon the road surveyed; and, second, that there is no evidence of a complete bridge. The motion was granted. Exceptions were ordered to be heard at first instance at General Term.

Further facts appear in the opinion.

*J. C. Cochrane*, for the appellants. It was not material how much of the highway had been worked, a design to maintain it being shown. (*Marble* v. *Whitney*, 28 N. Y., 306; 1 R. S., 521, § 99.)

*J. H. Martindale*, for the respondent. Plaintiffs were properly nonsuited. (8 Barb., 645; 27 id., 551; 11 N. Y., 392; 59 id., 319; *Mather* v. *Crawford*, 36 Barb., 564.) The road across the marsh never having been worked, had ceased. (Laws 1861, chap. 311; *Christy* v. *Newton*, 60 Barb., 337.)

CHURCH, Ch. J. This is an action brought upon the authority of "an act relating to the joint liability of commissioners of highways," passed May 25, 1841, as amended by act chap. 383, of Laws of 1857 (3 R. S. at large, 533, Edmunds ed.), to compel the defendant to contribute to the expense of building a bridge over Irondequoit creek which separates the town of Brighton from the town of Penfield, in the county of Monroe.

The first section of said act as amended declares that when two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of said towns without reference to town lines. Section three provides the mode of enforcing the liability against the defaulting town, by the town which has built the bridge. No question was made upon the trial but that the town of Brighton had built a bridge and had given the requisite notice provided by the statute. The question raised on the trial, that the bridge was not complete in not extending across the marsh on the Penfield side, is not material in the view I take of the case, although I am inclined to concur with the General Term, that it was not necessary for the town of Brighton to extend the bridge beyond the bank of the creek.

The act referred to is only applicable to towns *liable* to make or maintain any bridge or bridges, but it is silent as to

when this liability exists. The Revised Statutes specifies, among other duties of commissioners of highways, the following:

To give directions for the repairing of the roads and bridges within their respective towns.

To cause the highways and the bridges which are or may be erected over streams intersecting highways to be kept in repair (1 R. S., 501–2.)

For the purposes of this case, we shall assume, without deciding it, that, collating all the statutes upon the subject, an implied liability is created upon towns divided by a stream, where a bridge would connect an existing highway in the respective towns, to erect at joint expense such bridge, even though none had before existed. But a highway in each town which would be connected by a bridge must pre-exist the liability.

It is conceded by the appellant that there is no liability on the part of the defendant or the town of Penfield to contribute to the expense of this bridge, unless the bridge would constitute a portion of a connecting highway leading into the town of Penfield, and the question, therefore, is, whether there was, at the time, a lawful highway in the town of Penfield, extending to Irondequoit creek, at the point where the bridge was built. It appeared in evidence that, in 1858, a road was laid out by the authorities of the town of Penfield from a poplar tree at a road called the old Dugway road to the center of Irondequoit creek, at the place where the bridge was built, a distance of more than a mile. The road descended the bank to a raceway; thence skirting a high sand hill or "sugar loaf" to a point 200 feet from the creek, between which and the creek was a wet marsh, which was, a portion of the year, covered with water, and was impassable for teams.

The statute (1 R. S., 520), as amended by chapter 311 of the Laws of 1861, provides, among other matters not pertinent here, that every public highway laid out, or thereafter laid out, "that shall not be opened and worked within

six years from the time of its being so laid out, shall cease to be a road for any purpose whatever." This road was worked to some extent down to the raceway, and the raceway was twice bridged, but both bridges were washed away; the chasm through the sand-bank, where the race was dug, growing wider every year by the action of the water. Some work was also done on the sand-hill, but the extent of it, and what it accomplished in making a passable road, are left by the evidence somewhat uncertain. Some of the witnesses describe it as a " bridle-path." But it was undisputed that no work had ever been done in the 200 feet of marsh, nor was that part of it ever used as a highway, nor does it appear that a team ever did, or could, pass from the creek to the poplar tree, over the line of this road. The question is, whether this laid-out highway was " opened and worked " within six years after 1858, or at any time within the meaning of the statute. It seems to me clearly that it was not. A highway cannot be said to be opened and worked, unless it is passable for its entire length. It must be opened as a highway over its entire route. It need not be worked in every part, but it must be worked sufficiently to be passable for public travel. Any other construction would nullify the statute. Highways are for public use, to enable the public to pass and repass with teams and vehicles, such as are ordinarily used; and when a highway laid out shall remain unopened and unworked for six years, the statute declares that it shall cease to be regarded as a highway for any purpose. The requirement to open and work a highway, implies that it must be made passable as a highway for public travel. It need not be a first-class road; it need not be finished, but it must be sufficient to enable the public to pass over it.

It is not material to determine whether the road is to be regarded as an entirety, and hence, unless opened and worked throughout, that the whole road would cease, or whether that part which had been opened and worked would remain a highway. On the 200 feet of marsh which connects with the bridge, no work was ever done, and this ren-

dered the road as useless, for the purposes for which it was intended, as if the marsh extended the whole length of the road.

When this bridge was built, in 1869, there was no lawful highway with which it connected, and hence there was no liability upon the town or the defendant to contribute towards the expense of building the bridge. There are no authorities in conflict with these views. In *Marble* v. *Whitney* (28 N. Y., 297), the highway had been opened its entire length, and worked to such an extent that it was used by the public as a road. It may have been rather " a hard road to travel," but it was actually traveled. Here was no highway that was or could be traveled.

When this case was before the Commission of Appeals, the facts in respect to the condition of the marsh and other portions of the route did not appear, and the learned Chief Commissioner, in delivering the opinion, inferred that, although not worked in every part, it might be fit for actual travel, and he does not intimate that if this was not the case, it could be regarded as a highway.

Nor do I think that the laying out constitutes a highway so as to create a liability to bridge a stream; there must be a highway in fact—an existing thoroughfare suitable for travel. Hence, if this bridge had been built within six years of the laying out, no liability would have been created. The town might never obtain the right of way, or open and work it, and, until they did so, they would incur no obligation to build a bridge. It is an actual, and not a contemplated highway, that is required. I infer that the town of Penfield, after two ineffectual efforts to bridge the race, in view of the great expense in opening and maintaining the road, concluded to abandon it, and did practically abandon it, and never did open and work it. The bridge, which was built eleven years after the laying out of the highway, even if it exists, is worthless to either town, if the road continues as described in the evidence. The town of Brighton cannot compel Penfield to bridge the marsh or the race, or

finish the highway around the sand-hill, and, until these things are done, the bridge is of no avail, and they depend upon the voluntary action of the people of Penfield.

The judgment must be affirmed.

All concur, except ALLEN and MILLER, JJ., absent.

Judgment affirmed.