CALVIN SURDAM AND OTHERS, AS COMMISSIONERS OF HIGH-WAYS OF THE TOWN OF HOOSICK, IN THE COUNTY OF RENSSELAER, APPELLANTS, *v.* SOLOMON FULLER, AS COMMISSIONER OF HIGHWAYS OF THE TOWN OF WHITE CREEK, IN THE COUNTY OF WASHINGTON, RESPONDENT.

SAME *v.* THOMAS F. CORNELL, AS COMMISSIONER OF HIGH-WAYS OF THE TOWN OF CAMBRIDGE, IN THE COUNTY OF WASHINGTON, RESPONDENT.

*Repair of bridges — liability of adjoining towns for the cost thereof — right of a commissioner of highways of one town to maintain an action to enforce such liability against the commissioner of another town — Rule that voluntary payments cannot be recovered — applicability of it to payments made by a public officer — when parties are not concluded by a settlement of their accounts.*

The southerly end of a public bridge crossing the Hoosick river is in the town of Hoosick, while the northerly end thereof is partly in the town of White Creek and partly in the town of Cambridge. In 1879 the commissioners of highways of all three towns met and examined the bridge, and agreed that it must and should be repaired. There was no agreement as to the proportion of the expense which each town should bear, but it was supposed that, legally, one-half thereof should be borne by the town of Hoosick and one-quarter thereof by each of the other towns. The sum of $2,076.81 was expended in making the repairs; the commissioners of the different towns having expended that amount in severally purchasing materials and employing laborers. The commissioners of the town of Hoosick paid the sum of $1,026.28; the commissioners of the town of White Creek, $550.78, and those of Cambridge, $499.75. The commissioners of the town of Hoosick, claiming that the expense should have been divided equally between the three towns, brought this action

against the commissioners of one of the other towns to recover its share of the overpayment made by the town of Hoosick.

*Held,* that the rule that money voluntarily paid, with full knowledge of the facts, cannot be recovered back, did not prevent the plaintiff from maintaining this action. (POTTER, J., dissenting.)

*Quære,* as to whether this rule applies to payments made by a public officer out of public funds.

After the repairs were nearly completed the commissioners met to see how they stood, and after looking over the accounts Fuller, the defendant, told the plaintiff to pay him eighteen dollars and thirty cents and that he, Fuller, would pay two men in Washington county, and that the plaintiff should pay the men in Rensselaer county, and that would make it all right. This was done, and the plaintiff took the defendant's receipt for the money so paid to him.

*Held,* that this was not such a final settlement and accounting as estopped the plaintiff from maintaining this action. (POTTER, J., dissenting.)

Chapter 482 of 1875, authorizing the boards of supervisors of the several counties of the State to apportion, as such board might deem equitable, the expense of the construction of certain public bridges, and to provide for the care, preservation and reparation thereof, is permissive only; and, in the absence of all action thereunder by the board of supervisors, the old rule apportioning the cost of repairing bridges among the adjoining towns, established by chapter 225 of 1841, as amended by chapter 383 of 1857, still continues in force.

Sections 2 and 3 of the act of 1841, as amended by the act of 1857, conferred upon the plaintiff, as commissioner of the town of Hoosick, power to maintain this action against the defendant, as commissioner of the town of White Creek, to recover the share of the cost of making the said repairs, which was properly chargeable upon the latter town. (POTTER, J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee.

*R. A. Parmenter,* for the appellants.

*D. M. Westfall,* for the respondents.

LEARNED, P. J.:

There is a bridge across the Hoosick river, crossed by a public highway as a part thereof. The southerly end of the bridge and the highway on the south side of the river are wholly within the town of Hoosick. The northerly end of the bridge and the highway on the northerly side of the river are partly within the town of White Creek and partly within the town of Cambridge; the dividing line passing in or about the center of the bridge.

In 1879 the bridge was out of repairs, and the commissioners of

highways of all the towns met and examined it, and concurred that the bridge must be repaired and determined to proceed. There was no agreement as to the proportion of the expense which should be borne by each. But they all supposed that, legally, the town of Hoosick was bound to pay half the expense and the towns of Cambridge and White Creek each one-quarter.

In making these repairs the total amount expended was $2,076.81; of which the commissioners of highways for the town of Hoosick paid $1,026.28; the commissioners for White Creek, $550.78; the commissioners for Cambridge, $499.75.

It appears that the commissioners purchased materials from different persons and employed laborers; some of the bills were paid by one commissioner and some by another.

It is now claimed by the town of Hoosick that the expense should be borne equally by the three towns. This action is brought against the commissioner of White Creek to recover the ratable share of the expense. The learned referee held that the money was paid voluntarily, with a full knowledge of the facts, and therefore could not be recovered back. In other respects he seems to have decided with the plaintiff.

We do not think it necessary to inquire whether this general principle that money voluntarily paid cannot be recovered back applies to the case of public officers who pay out the money of the State, or of a county or of a town. As the power of such officers is generally limited by statute, the payment of money contrary to statute might be a misappropriation by which the recipient would get no rights. For instance, if a county treasurer should pay money on an illegal claim, we doubt whether the payee could resist a recovery upon the ground that the treasurer paid voluntarily and with knowledge of the facts. (*People ex rel. Merritt* v. *Lawrence*, 6 *Hill*, 244.) The case of *Supervisors* v. *Briggs* (2 Denio, 26) involved other principles.

But it is not necessary to examine that point, to which the learned referee briefly alludes, because this is not a case where the principle applies. The payments were to the workmen and to those who furnished materials. Admitting that those payments could not be recovered back, that admission does not decide the question how much these three boards should contribute as between themselves.

The principle referred to is that where one person makes a claim against another, and the latter, with knowledge of the facts, pays it, that payment cannot be recovered back. (See 2 Alb. Law Jour., 405, and subsequent articles.) But in the present case the three boards were engaged in a common enterprise. It is evident that it was necessary to build the bridge as a whole. It would be impossible for each board to build a third of it, or any other portion, separately. If one board paid more than its share to laborers or for materials, that was not a payment to the other board, but, as it were, money paid and advanced to its use. If the defendant's views on this point are correct, then in case one board had paid the whole expense to the laborers and for the materials there would have been no right to be reimbursed for the share properly due from the other boards. We feel quite confident that this principle of voluntary payment does not apply to this case.

Nor is it necessary to say that this was a joint enterprise. It is enough that it was one which necessarily was to be done by united action, and, as the referee finds, was so done; and it was one as to which each board was bound to pay a certain proportion.

We pass then to consider whether the judgment can be sustained upon other grounds.

The referee finds as a matter of fact that when the repairs were completed the commissioners accounted together and had a full and final settlement on the basis aforesaid, viz.: Hoosick paying one-half and each of the other towns one-quarter. And it is insisted that this is conclusive.

It appears that after the repairs had been nearly completed the commissioners met to see how they stood, and after looking at the matter Mr. Fuller, the defendant, told the plaintiff to pay him eighteen dollars and thirty cents, and that Mr. Fuller would pay two men in Washington county, and the plaintiff pay the men in Rensselaer county, and that would make it all right. Plaintiff did so and took his receipt. It appears also that after that time there was another figuring of the matter which brought out a result slightly different.

Now this, at the most, can be taken only for an agreement as to how much each of the three boards had severally paid; and as to that point no dispute arises. It is admitted that they had severally

paid to the workmen and to the laborers the amounts they found and agreed upon. Suppose that one of these boards had paid the whole; and that thereupon the three boards had met and ascertained that fact and had said that this was all right; would it be claimed that such action made an account stated so as to deprive the others of their rights? An account stated is in the nature of an admission of facts, and· it is not the *facts* which are in dispute in this present case. There is nothing in the way ·of estoppel; because there has been no action by the defendant on the strength of the alleged settlement. And we think that there was not such a settlement of a disputed matter as prevents the plaintiffs from asserting any rights they may have.

That the three boards of commissioners, representing their respective towns, should have contributed equally to the repairs, is settled, we suppose, by *Lapham* v. *Rice* (55 N. Y., 472); and *Beckwith* v. *Whalen* (65 id., 327; S. C., 70 id., 434); unless, as is claimed by the defendant, the law has been changed by chapter 482, Laws of 1875.

The act chapter 225, Laws 1841, was " an act relating to the joint liability of commissioners of highways." The act chapter 383, Laws 1857, was an amendatory act simply. The act of 1875, on which the defendant relies, is the general act to confer powers of local legislation on boards of supervisors. Section 1 gives these boards authority to make and administer laws and regulations as follows : Subdivision 4 is " to apportion, as such board may deem equitable, the expenses of the construction of any public bridge, * * and in all cases such counties shall each pay not less than one-sixth. Section 5 is to provide for the case, etc., of a bridge crossing a stream which forms the dividing line of counties and the maintenance of which is, by law, a just charge on such counties or on the towns in which the bridge may be situated, and to apportion the charges, etc.

And here we may notice that chapter 346, Laws 1883, was passed after this bridge was repaired, and this action commenced, and of course does not apply.

Chapter 77, Laws of 1878, amended subdivision 4 above cited, striking out the requirement that the county must pay one-sixth.

Taking then the law as is stated in 1879, when this work was done, we have an authority in the board of supervisors to make a

certain apportionment of the expense of constructing such a bridge. Which board of supervisors would have authority is not quite clear. And we have the further authority in certain cases, under sub-division 5, to apportion the charges for repairs. But suppose that the supervisors have not, either by general law, or by a special reso-lution (if that be proper), made any apportionment; is there then no law on the subject? We think that, at least in the absence of any action by the supervisors, the old law remains. The act is permissive and authorizes the supervisors to do certain things. If they do no choose to legislate, the old rules are not changed. This is especially true when the old law (in this case the Laws of 1841 and 1857 above cited) was a carefully prepared scheme for a special purpose.

The remaining question is whether this action can be maintained by the commissioners of highways of one town against the com-missioners of highways of the other. The defendant insists that the authority given by sections 2 and 3 of the act of 1841, as amended by the act of 1857, to bring an action, applies only to the case of a neglect or refusal to join in making the repairs. This act begins by declaring that the bridge is to be maintained at joint expense without reference to town lines. It then provides that if the commissioners of one town refuse to act the others may enter into joint contracts; "and said commissioners (of said towns so liable) may be proceeded against jointly for any neglect of duty in reference to such bridges." It further provides that if the commis-sioners of highways of either such towns, after reasonable notice in writing from the commissioners of highways of any other of such towns, shall neglect or refuse to build or repair and such bridge, it shall be lawful for "the commissioners so giving such notice to make or repair such bridges, and then to maintain a suit at law in their official capacity against said commissioners so neglecting or refusing to join in such making or reparing." In such action there is to be a recovery for the amount which the town would be liable to contribute.

Now the defendant insists that this provision of the statute is to be limited to a case where the board of commissioners refuses to consent to build or refuses to build; that in this case the defendant did not refuse. But that is a very narrow construction. Sup-

pose a board of commissioners say, we consent to build, and then do nothing. Can they thus escape liability? The statute says that they must not only consent, but within a reasonable time *thereafter* must "do the same;" that is, must repair.

Now the object of the notice is to give the commissioners an opportunity to act. In the present case they had actual notice and they met. Then the question must be whether their failure to pay their proper share is a neglect within a reasonable time to repair. The statute contemplates something which is to be done within a reasonable time after consent. Has the defendant then repaired the bridge as he was bound to do? Suppose he had bought one stick of timber and put it in the bridge, could he say, I have not refused to repair? This would be absurd. He is to do that which the law imposes on him, viz., (as we have seen) in this case, one-third. And the object of the statute is to enable the commissioners who do the work to recover the ratable portion of the commissioners who do not. To the extent to which the commissioner has not paid his proper share, he has neglected to join in the repair. This is the reasonable, and we think the proper construction of the statute; and it coincides with the view taken in *Lapham* v. *Rice* (*ut supra*).

The defendant insists that the action should have been brought by the supervisor of Hoosick. That argument depends on the point just discussed. If we are correct in thinking that an action, under the circumstances of this case, is authorized by the statute above cited, then the defendant is wrong on this last position, because the statutes expressly authorize an action in this form.

The judgment should be reversed, new trial granted, referee discharged, costs to abide event.

### SAME v. CORNELL, AS COMMISSIONER, ETC.

This case is similar to the preceding, and is disposed of in the same manner.

---

POTTER. J. (dissenting):

I have examined with some degree of care the report of the learned referee in the above entitled cases, and the points and argument of counsel, upon the respective sides, of the questions involved

in the appeals from the judgments entered upon the referees report, and I am constrained to differ from the opinion of my associates. It is proper to state the grounds of my dissent.

For a more complete understanding of the questions involved in these cases, perhaps it should be stated that the plaintiffs' who were at the time of making of the repairs to the bridge commissioners of highways of the town of Hoosick, in which is located the south end of the bridge, and the defendants, who were respectively commissioners of highways of the town of White Creek and Cambridge, in which is located the north end of the bridge, met at this bridge to examine it and determine upon its repairs. They determined that repairs were necessary and that they would proceed to make such repairs; that the said bridge had been several times prior to this repaired by the commissioners of these towns, who had paid for such repairs without objection or dissent in the proportion of one-half by the town of Hoosick and one-fourth each by the towns of White Creek and Cambridge, and that the said commissioners on the occasion of this meeting to consider the repairs, and throughout the making of the repairs, understood and supposed that the said towns were legally liable to pay for the repairs made in that proportion; and intended to make said repairs and to pay for the same in that proportion. That all the said commissioners were engaged and participated in making the said repairs, by buying and paying for the material and by hiring and paying for the labor employed in making the said repairs. Acting upon this theory, no doubt, it was found when the parties met to adjust and settle the expense, after the repairs had been completed, that the Hoosick commissioner had paid out ($1,026.28) ten hundred and twenty-six dollars and twenty-eight cents, which lacked only twelve dollars and fifteen cents of one-half of the total expenditure, viz., $2,076.81; that there only then remained to be paid a few small bil's to laborers in White Creek and Hoosick, and the defendant Fuller said to plaintiffs, after it was ascertained just how much had been paid as above stated, "you give me eighteen dollars and thirty cents and I will give you a receipt for it and I will pay my men and you pay these men down here and that will square us all up," and again "that will make us even," and this result was assented to, and the referee finds there was a full settlement of the expense of the repairs

upon that basis. The referee has found that all these payments of expenses were voluntarily made by the plaintiff and with a full knowledge of the facts and the evidence is substantially undisputed upon which that finding is predicated. The rule is well established that payments voluntarily made without fraud and with a full knowledge of all the facts cannot be recovered back. The application of this rule to individual dealings is unquestionable. (*Silliman* v. *Wing*, 7 Hill, 159; *Mowatt* v. *Wright*, 1 Wend., 355.)

Is it not just as applicable to corporations and to agents and trustees acting in behalf of others. This rule was held to apply and to bind a guardian for infants, who had made payments in gold when at a premium upon a demand thereof, when a payment in currency would have satisfied the demand. (*Flower* v. *Lance*, 59 N. Y., 603.) The same rule was applied to a corporation, one of whose officers, the treasurer, had paid an illegal tax on demand. (*N. Y. & H. R. R. Co.* v. *Marsh*, 12 N. Y., 308.) The case, *Supervisors of Onondaga* v. *Briggs* (2 Denio, 26), I think, very clearly and unmistakably involved this principle, and Judge BRONSON says, at page 39, "*this*" and another ground is each a complete answer to an action to recover back money.

That was a case were the board of supervisors of the county of Onondaga sued Briggs, who had been a district attorney of the county, to recover back moneys which the board of supervisors had allowed to him for services not rendered and of which the board had full knowledge when it made the payment. It was in that case distinctly held the board could not recover it back for that reason.

The rights and conduct of the State and municipal corporations are to be determined and disposed of in the same manner as the rights and conduct of individuals in respect to business matters. (*People* v. *Stephens*, 71 N. Y., 529, and cases cited; *Curnen* v. *The Mayor*, 79 N. Y., 511) This would seem to be a very clear and marked case of an adjustment and settlement of the accounts and payments with a full knowledge of all the facts in relation to them by all the parties concerned. There was no suggestion or pretense at the time of the settlement, when the demand of payment was made, when the action was commenced, when it was tried, or at any time whatever, that each of the parties was not conversant with every fact and trans-

action throughout the entire business. By this payment of the eighteen dollars and thirty cents ($18.30), and the remark of defendant Fuller accompanying it, it was unmistakably meant and intended that that sum will pay the Hoosick half of the whole expense and the one quarter that White Creek and Cambridge were respectively to pay. It could not have meant anything else. It could not mean that would pay off all liabilities, for if it had meant liability and the plaintiff had already paid much more than one-third which is conceded, the plaintiff would not in addition have given the defendant eighteen dollars and thirty cents, and make the sums paid still more disproportionate and have increased the defendants' liability to the plaintiff by the sum of eighteen dollars and thirty cents. There can be no question that this was in fact, and was intended to be, a full settlement of the payments and accounts in relation to the repairing the bridge between the parties. Here then was an account stated and settled and it *is conclusive upon the parties unless impeached* for fraud or mistake. (*Lockwood* v. *Thorne,* 1 Kern., 170; *Chubbuck* v. *Vernam,* 42 N. Y., 432; *Johnson* v. *Hartshorne,* 52 id., 178).

The defendant makes the further point that this court should not grant a new trial if it should not affirm the decision of the referee, for the reason that the plaintiff cannot maintain the action and must therefore ultimately fail. My associates hold that the action of the plaintiff is maintainable. The action is brought by the plaintiffs as commissioners of highways of the town of Hoosick, against the defendant as commissioner of highways of the town of White Creek. As we have seen, the action is brought to recover the difference between one-fourth and one-third of the moneys expended in repairing the bridge in question, which difference was paid by the plaintiffs.

This bridge was repaired by the commissioners of the three towns, after consulting together as to the necessity of the repairs and acting in concert in hiring labor and purchasing material; the same were paid for, sometimes by one and sometimes by another commissioner, but all acting upon the supposition that one-half of the whole expense was due from the town of Hoosick and one-fourth each from the towns of White Creek and Cambridge, and when the repairs were completed the commissioners accounted together and

paid for the repairs in this proportion. Neither of the commissioners of the towns of White Creek or of Cambridge, had been furnished with funds to repair the bridge. Can this action be maintained by the plaintiffs as commissioners, to recover of the defendant as commissioner, the difference between one-fourth paid by the defendant and one-third which was paid by the plaintiff towards the repairs? While therefore the cause of action is in the nature of an action to recover for moneys loaned or advanced by the plaintiff to the defendant in repairing a bridge by the commissioners of three towns equally bound to furnish the money to repair the same, yet it lacks this element of such cause of action, viz., there was no agreement, express or implied, to loan or borrow or to repay, or any expectation or intention to repay the money sought to be recovered.

The action being brought by a public officer against a public officer, we must find in the statute creating those officers and defining their powers and duties as such officers, the authority for its maintenance. The statute upon this subject will be found in Revised Statutes, chapter 16, title 1, of part 1 (1 R. S., 501 *et seq.*), "on highways, bridges and towns," and the various acts of the legislature subsequently passed amending and adding to those provisions. The principal amendatory acts will be found in chapter 225 of the Laws of 1841; chapters 383 and 639 of the Laws of 1857; chapter 103, Laws of 1858; chapter 442 of the Laws of 1865; chapter 474 of the Laws of 1875; and chapter 700 of the Laws of 1881. In the reading of these various provisions, with such care as I have been able to bestow, I do not perceive any warrant or authority for the maintenance of this action.

Under the act of 1841, as amended by chapter 383 of the Laws of 1857, where two or more commissioners are liable to build and maintain bridges, the same are to be maintained at the joint expense of the said towns. By section 3 of the last mentioned act, if the commissioners of any one of the said towns, after notice in writing from the commissioners of any other of such towns, shall not within twenty days give their consent in writing to build or repair such bridge, and shall not within a reasonable time thereafter do the same, the commissioners so giving notice to make the said repairs may

maintain a suit at law in their official capacity to recover the sum the delinquent commissioners ought to have paid towards the repairs. There is no suggestion or pretense that there was any such notice in writing given, or any refusal upon the part of the defendant to make the repairs. On the contrary he voluntarily joined the plaintiffs and acted with them in making the repairs.

Nor can anything be found in chapter 639 of the Laws of 1857, to warrant this action, nor in chapter 103 of the Laws of 1858, nor in chapter 442 of the Laws of 1865. The former of these acts provides for an application to the court for an order compelling each town liable for repairs, to pay its proportion of the repairs paid by the other towns and the latter statutes only contain provisions for raising the funds for repairs, through the action of the town auditors, where there is no dispute between the towns as to their liability.

Nor is there anything in chapter 482 of the Laws of 1875, or chapter 257 of the Laws of 1876, or in chapter 77 of the Laws of 1878, or in chapter 439 of the Laws of 1881, applicable to the question of the right of the plaintiff to maintain this action. Those statutes relate to the powers of the boards of supervisors to determine how much the county and the towns shall contribute towards the repairs of bridges. There is nothing in this case showing that the board of supervisors of either Rensselaer or Washington counties, ever took any action in relation to the proportion of the *expenses* of their towns towards the repair of this bridge. In that case the Laws of 1841, as amended by the Laws of 1857, would control the proportions paid by the towns, the commissioners of which have made the repairs in question. It is only the act of 1857 which has any provision fixing the proportion to be paid by each town and authorizing the commissioners of one town to bring an action against the commissioners of another town to recover the proportion to be paid by it in the condition provided for by that act, but which condition, as we have seen, does not exist in this case.

I do not see how the facts of this case can be moulded or shaped so as to make or to constitute the condition of a refusal after notice in writing to repair and the making of the repairs by the plaintiffs after such refusal by defendant.

It would seem to me to be a manifest violence to the language of the statute, and a palpable perversion of the facts of this case, to

construct them into a notice in writing to make the repairs, and a refusal to make them, when no notice in writing was given, and there was, in fact, no refusal to make the repairs. But, on the contrary, the defendant actually joined the plaintiff and co-operated with him in making the repairs from the beginning to the end thereof, and paid his full proportion for all the labor and material, and to the entire satisfaction of the plaintiff, as the law and facts were understood by all parties.

If I am correct that there is no statute especially authorizing the plaintiff to maintain this action, the inquiry remains, whether the action can be maintained under the general duties and powers of the parties to this action as commissioners of highways. The general rule doubtless is that all public officers have capacity to sue commensurate with their public duties and trusts. (*Loonie* v. *Hughes*, 26 N. Y., 516.) That rule relates to the capacity of the plaintiff to sue. But the question in this case is two-fold and involves the consideration of another element, and that is the capacity of the defendants, as commissioners, to be sued upon this cause of action. Sections 1926 and 1927 of the Code of Civil Procedure, which are substantially a re-enactment of former statutes, provide when officers may sue and be sued as such. They may sue upon a contract *lawfully* made with those officers; to enforce a liability created or a duty enjoined by law upon those officers; to recover a penalty or a forfeiture given to those officers, or to recover damages for an injury to the property or rights of those officers.

The facts in this case do not show any *contract* made by the plaintiffs as commissioners, with the defendant as commissioner. If any contact was made, it must have been that the plaintiffs, as commissioners, would lend or advance the moneys or a part of the money which the defendant should have furnished. If such a contract was made it was unlawful, for the plaintiffs, as commissioners, had no legal right to lend the money intrusted to them for building the bridge, and the defendant had no right to borrow money. (*Van Alstyne* v. *Freday*, 41 N. Y., 177.) The law created no liability nor enjoined any duty upon the plaintiffs to furnish more than one-third of the expense of repairing the bridge, unless done in the manner and under the circumstances as provided and before referred to in the act of 1857. The defendants, as commissioners of high-

ways, were not charged with any duty with respect to the care and maintenance of roads or bridges, except in so far as they were furnished with the power to provide means, or were previously provided with means by the town to accomplish such purpose. (*People* v. *Adsit*, 2 Hill, 619; *Barker* v. *Loomis*, 6 id., 463; *People ex rel. Everett* v. *Board of Suprs.*, 93 N. Y., 402.) If the parties, as commissioners, assume to make contracts or assume liabilities not authorized by statute, neither the commissioners as such, nor the towns, are liable, but the commissioners are individually liable. (93 N. Y., 403, *supra*.) But as before stated there was no contract either express or implied to lend, or advance, or to borrow and repay the moneys sought to be recovered in this action.

The cases referred to by the learned counsel for the appellant I think do not militate against these views.

The case of *Victory* v. *Blood* (25 Hun, 515), was a case brought by the incoming commissioner against the out-going commissioner for moneys in his hands, where the statute made it the duty of the defendant to pay over such moneys to the plaintiff; and Justice LEARNED dissented to the maintenance of the action in that case.

In the case of *Lapham* v. *Rice* (55 N. Y., 472), the question under discussion was not raised, and the question discussed related to the jurisdiction of the action and the right to amend, and the court moreover held there was no cause of action in favor of any one.

The case of *Beckwith* v. *Whalen* (70 N. Y., 430), was where the steps, under statute of 1857, viz., notice in writing to repair and refusal, etc., had been taken to authorize the bringing of the action by the commissioners of one town against the commissioners of the other town.

My conclusion is, that if the judgment of the referee was erroneous upon the ground he placed it, the action cannot be maintained in its present form, and a new trial should not be granted.

Judgment reversed on law and fact, referee discharged, new trial granted, costs to abide event.