THE BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF COWLEY *et al.* V. L. F. JOHNSON.

No. 15,058.    (90 Pac. 805.)

SYLLABUS BY THE COURT.

1. HIGHWAYS—*"County Roads."*  Where an act of the legisla-
ture declares all section-lines in a certain county to be public
highways, and provides that they shall be opened by the
board of county commissioners upon the petition of ten house-
holders, such section-lines thereby become county roads with-
in the meaning of that term as used in the statute of 1879
(Gen. Stat. 1901, § 6058) providing that any part of a state
or county road not opened for travel within a stated time
shall be vacated.

2. ——— *Vacation by Non-user—Computation of Time.*  In the
case of a county road so established by special act the pro-
vision of the statute of 1879 that any county road shall be
vacated if it remains unopened for seven years after "the
order made or the authority granted for opening the same"
refers to the time that the act is passed and not to the time
an order for the opening of the road is made by the county
commissioners.

3. ——— *Road Held to Have Been Vacated.*  Such a, county
road, created prior to the enactment of 1879, and remaining
unopened for travel for seven years thereafter, was vacated
in consequence of such omission; the easement of the public
therein has been lost and can only be reacquired by new
proceedings.

Error from Cowley district court; CARROLL L.
SWARTS, judge.  Opinion filed June 8, 1907.  Affirmed.

*Ed J. Fleming*, and *Torrance & Bloss*, for plaintiffs
in error.

*Hackney & Lafferty*, for defendant in error.

The opinion of the court was delivered by

MASON, J.:  The board of county commissioners of
Cowley county attempted to open a highway upon a
section-line crossing land owned by L. F. Johnson.
He sought and obtained a judgment enjoining such

5—76 KAN.

attempt, and the board prosecutes error. The case was heard upon an agreed statement of facts and turns wholly upon questions of statutory interpretation.

In 1872 the legislature passed an act (Laws 1872, ch. 178) the first section of which declared all section-lines in Cowley county (and in several other counties, none of them contiguous thereto,) to be public highways. A subsequent section (§ 3) provided that "all the unenclosed or unimproved highways, provided in section one of this act, shall be opened by the board of county commissioners upon the presentation of a petition to said board, signed by not less than ten free-holders, residents of the county in which said highway is located."

The tract in question was at the time unenclosed and unimproved. No effort was made to open a road upon it until some time in 1905. No compensation has been made to Johnson or his grantors and none is contemplated. The tract was once a part of what is known as the "Osage Trust and Diminished Reserve Lands." The county contends, and Johnson denies, that in 1872 this was public land within the meaning of the federal statute of 1866 (U. S. Rev. Stat. 1878, § 2477) which granted "the right of way for the construction of highways over public lands, not reserved for public uses." If it was, then under the authority of *Tholl v. Koles*, 65 Kan. 802, 70 Pac. 881, when it passed into private ownership it was taken subject to the easement resulting from the state and federal statutes. Assuming for the present that this is the case, the question then presented is as to the effect of the following statute, which was enacted in 1879:

"That any county road or part thereof which has heretofore or may hereafter be authorized, which shall remain unopened for public use for the space of seven years at any one time after the order made or the authority granted for opening the same, shall be and the same is hereby vacated, and the authority granted for erecting the same is barred by lapse of time; and any state road or part thereof which has heretofore or may

hereafter be authorized, which shall remain unopened for public use for the space of ten years after the passage of the act authorizing the same, shall be vacated, and the authority for opening it repealed for non-use." (Gen. Stat. 1901, § 6058.)

The county maintains that the highway under consideration was neither a state nor a county road, as those terms are used in this statute; that by state roads are there meant roads laid out by the legislature directly, and by county roads those laid out by the county commissioners under the terms of the general road law; that this highway became such by neither of these methods, but by dedication on the part of the general government through the act of congress referred to, followed by acceptance by the state through the statute of 1872. We cannot agree to these contentions. It was held in *Barker v. Comm'rs of Wyandotte Co.*, 45 Kan. 681, 26 Pac. 585, that a dedication of a strip of ground by the owners for the purposes of a road, and its acceptance by the county commissioners, does not make it a county road or a regularly laid out road; and in *Tholl v. Koles*, 65 Kan. 802, 70 Pac. 881, the acts of congress and of the legislature in such a case as the present are spoken of respectively as a dedication and acceptance of land for a highway. But the grant by the general government to the local authorities of a right to locate a highway wherever they see fit across public lands is a very different thing from the tender by the owners to the public of a specific tract for that purpose—the kind of dedication referred to in *Barker v. Comm'rs of Wyandotte Co.,* *supra.* In the one case the position of the road is determined by the representatives of the public charged with that duty, and in the other by persons having no official responsibility. A road created by act of the legislature is no less a laid out highway because the right of way therefor without compensation is granted in advance of any step being taken for its creation.

The terms "state road" and "county road" seem to

have no precise technical meaning, and it might be permissible to suppose that in the statute under consideration they were used merely to distinguish highways created directly by the legislature and those erected by the county authorities under general laws. (See opinion of Mr. Justice Lyon in *The State v. Hayden,* 32 Wis. 663, 673.) But a better-supported view is that any public road lying wholly within one county is a county road, while a state road extends through or into several counties.

"What is known in some sections as a state road is a highway laid out by the direct authority of the state, generally between distant places and through different counties, to supply a want felt by a large district of country, which because of the diversity of interests the local authorities are not always willing to supply." (15 A. & E. Encycl. of L. 352.)

"A state road is a road running into two or more counties, and is distinguished by this from a county road, which lies wholly within one county. The first was formerly established by acts of special legislation; the latter by county commissioners, under general laws." (*Ohio, ex rel. Stebbins v. Treasurer of Wood County,* 17 Ohio, 184, 186.)

The distinction recognized by the Ohio court is entitled to especial weight from having been announced in a decision rendered in 1848, our road laws being largely derived from those of that state. The road here involved, lying wholly within Cowley county, was by this test a county road. And the title is not inappropriate, since its essential character is no different whether the legislature created it directly by special act or indirectly through the county board acting under a general law.

It is said, however, that the statute of 1879 conflicts with that of 1872, and there being no express repeal the provisions of the earlier act should stand, upon the principle that the special law should prevail over the general. The later act, however, is not one of repeal, and amends the first one only as all new legislation is

in a sense amendatory. It sets a limit to the rights offered to the public under the other act. That it is general while the other is special does not affect the matter. Its expressions are clear and unambiguous. In set terms it refers to all roads authorized but not actually opened for travel. Its reference to roads created by act of the legislature demonstrates that it applies to some special statutes, and if it covers any there is no reason why it should not reach all.

There is, however, room, for doubt as to when the limitation of seven years allowed for the opening of a road which has been authorized is to begin to run. The statute says "after the order made or the authority granted for opening" the road. The act of 1872 provided for the opening of the road by the county board upon the presentation of a petition of ten freeholders, and the language quoted might be deemed to refer to the time such a petition should be presented. To adopt this construction, however, would be to put too narrow an interpretation upon the statute. The expression "to open," as applied to a street or road, is used almost indifferently to express two very different processes—the act of establishing or creating a highway, and that of actually putting in shape for travel one already having a legal existence. The purpose and intent of the act is manifestly to fix a limit within which roads must become such in fact, after they have been given that character by law. It is essentially a statute recognizing and defining abandonment by non-user. The alternative phrases "the order made" or "the authority granted" for opening the road seem to have been suggested by the two methods by which a county road may be created—by order of the board or by authority granted by special act of the legislature. The act of 1872 made the tract in question a highway in contemplation of law. Nothing remained but to open it for public use. The statute of 1879 allowed those interested seven years in which to avail themselves of the privilege offered. We think it was the legislative

intent that if no advantage should be taken of it within that time it should be withdrawn. And as in fact no step was taken in that direction until 1905, the road which was created by the act of 1872 was vacated by the operation of that of 1879.

This conclusion makes it unnecessary to decide whether the land now owned by Johnson was in 1872 a part of the public domain.

The judgment is affirmed.