Argued October 4, 1967, affirmed February 28, 1968

# HISLOP ET UX, *Respondents, v.* COUNTY OF LINCOLN ET AL, *Appellants.*

437 P. 2d 847

*W. T. Hollen,* Newport, argued the cause and filed a brief for appellants.

*Ernest J. Burrows,* Portland, argued the cause for respondents. With him on the brief was Charles D. Dolph.

Before McALLISTER, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

LUSK, J.

Since 1951 plaintiffs have owned a tract of land approximately 27 acres in area in Lincoln County on Alsea Bay. Plaintiffs make their home on the property and operate there a trailer park. In recent years lands fronting on Alsea Bay and the Pacific Ocean and lying west of plaintiffs' property have been subdivided and platted. This development, known as Bayshore, contains 900 lots. The controversy here arises out of the defendant Lincoln County's claim, first asserted in 1965, that a county road, which has never been opened, crosses plaintiffs' property from United States Highway 101 on the east to Bayshore on the west. Bayshore is not without a means of access from Highway 101, but the County Commissioners are evidently of the opinion that the alleged county road is desirable and needed for that purpose. Plaintiffs, denying the existence of such a road, brought this declaratory judgment proceeding to obtain a judicial settlement of the controversy.

The court entered a decree in favor of the plaintiffs and defendants have appealed.

There is no issue of fact. In 1891 the Benton County Court (the *locus in quo* then being a part of Benton County) established what is referred to in the evidence as "Nice Road." The road's point of beginning was several miles east of plaintiffs' property and its western terminus was the Pacific Ocean. There is no dispute about the correctness of the proceedings establishing the road. Neither is there any dispute about the fact that the road has never been opened at any point west of Highway 101. As far as plaintiffs' property is concerned, it is only a road on a map and by description in the proceedings for its establishment on file in Lincoln County.

The 1860 Session of the Legislative Assembly, as part of an act prescribing the procedure for the establishment of county roads and related matters, provided: "If any part of any road in this State shall not be opened for two years from the time of its location, the same shall become vacant." Oregon Laws 1860, page 33, § 37. This statute was amended in 1864 by substituting "four years" for "two years." Deady, General Laws of Oregon 1845-1864, page 868, Chapter 47, Title I, § 37, Act of October 22, 1864, § 8.[①] As so amended the statute remained in effect until its repeal by Oregon Laws 1903, page 262, § 79. As a part of the same Act, section 55 was adopted, which read:

> "The right of counties in this state to public roads, or to open public roads, shall not be extinguished by any adverse possession, however long continued, and no title to lands included in such public roads, when such roads are once established,

[①] The 1864 Laws were never printed except in Deady's compilation. See Deady, *supra*, page 137.

shall be acquired as against such county through the operation of the statute of limitations."

It is the contention of the plaintiffs that the repealed statute, which was in effect for twelve years after the establishment of Nice Road, was self-executing and, as the part of that road now in question was never opened, it must be regarded as vacated.

The County contends that the statute was not self-executing, but constituted a direction to the county court to vacate a road which was not opened for four years after the time of its location or establishment.

To support its position the County argues that the statutes in effect during the relevant years vested supervision of all county roads in the county court of the county wherein the roads are located "and no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in this state except by the authority of the county court of the proper county." Deady, supra, § 1; Hill, § 4061; B & C § 4822. This provision, it is said, would conflict with the four-year statute if the latter were construed as self-executing, but, if construed in the manner contended for by the County, both sections would be given effect, and the result would be in consonance with the accepted rule that statutes should be interpreted to avoid injurious consequences. These injurious consequences are thus portrayed in the County's brief:

"Every legally established county road created or established but not opened for travel between the years 1862 and 1903 would be open to question and presumably vacated. There would be imposed upon every county the duty to prove that its present roads created prior to 1903 were actually opened for travel and travelled. Such proof would in most instances be beyond the recollection of man and consequently impossible to prove."

We observe in passing that counsel's assumption as to the burden of proof in the hypothetical cases suggested is not acceptable. We think it would be the other way around, for under the presumption that official duty has been regularly performed, it would be presumed that the county officials would recognize that an established road which had not been opened for more than four years had been vacated and would not undertake to improve private property and open it to public travel. Hence, the burden would be upon the one asserting a four-year failure to open a road to prove it.

Oregon is not the only state which has enacted such laws. For example, an Ohio statute of 1845 provided: "That any county road, or part thereof, which has heretofore, or may hereafter be authorized, which shall remain unopened for public use for the space of seven years, at any one time, after the order made, or authority granted for opening the same, shall be, and the same is hereby vacated, and the authority granted for erecting the same is barred by lapse of time, * * *." In 1850 the Supreme Court of Ohio in *Peck v. Clark,* 19 Ohio 367, explained the reason for this legislation in this language:

"* * * Long before the passage of this law, and up to the present time, we had a statute making provisions for vacating a useless or unnecessary road, that has been opened. Any person, at all acquainted with the situation of the country, will at once perceive the object and necessity of this statute. Many roads had been authorized through the country, that from the difficulty and expense that would be attendant on their opening, or in some instances, because they were not necessary, remained unopened. Persons were purchasing and improving lands, over which these roads were to

run, without knowing of their existence, other avenues of travel were opened in the neighborhood, that in many instances, supplied their place, and rendered them unnecessary, even if necessary when first authorized. Whenever a road, that had for a long time been in this situation, was attempted to be opened, great difficulty and disquietude were thereby produced, and the legislature to obviate such difficulties, and presuming that a road, that had been authorized, but not opened for so long a time, was unnecessary, passed this statute.   *   *   *"
19 Ohio at 371.

This court, viewing the matter more than a century after our law was adopted by pioneer legislators, cannot speak of it with the same certainty as did the Ohio court with respect to the reasons behind the statute of that state, but it is not a rash assumption that conditions similar to those in Ohio in 1845 existed in Oregon in 1860, and that the Oregon Legislature in passing our statute had in mind the avoidance of the same sort of mischiefs to which the Ohio court referred.

On the other hand, it would be wholly speculative to say, as counsel argues, that unless the County's interpretation of the statute is adopted "the result would work chaos in the entire road system of every county in the state." There is no evidence, empirical or otherwise, to support that assertion.

In all the cases which have come to our attention construing such statutes it is held either expressly, as in *Van Sant v. Seattle,* 47 Wn 2d 196, 199, 287 P2d 130 (where the earlier Washington cases are cited), or, by necessary implication, that they are self-executing: *Cowley County v. Johnson,* 76 Kan 65, 90 P 805; *Beckwith et al v. Whalen,* 70 NY 430; *Palmer v. East River Gas Co.,* 115 App Div 677, 101 NYS 347; *Peck*

*v. Clark,* supra; *State ex rel Kerr v. Neitz,* 58 Ohio App 135, 16 NE2d 236. And see 11 McQuillin on Corporations (3d ed rev) § 33.79.

We agree with these courts. The statutes of other states are not as concisely worded as ours, but all have the common purpose of terminating the legal existence of a road which has not been opened to public use and travel after the passage of a stated time. Our statute, like those of other states, was "essentially a statute recognizing and defining abandonment by nonuser." *Cowley County v. Johnson,* supra, 76 Kan at 69. Had the statute read "shall be vacated," a plausible argument might be made for the County's position, but the Legislature used the word "become," which means: "To pass from one state to another; to enter into some state or condition by a change from another state, or by assuming or receiving new properties or qualities, additional matter, or a new character." Webster's New International Dictionary; *State v. Laundy,* 103 Or 443, 476, 204 P 958, 206 P 290. So, we think it was clearly intended that when the statutory time has run and the road has not been opened it shall pass from the state of legal existence to non-existence.

There is no necessary conflict between the section of the road laws vesting in the county courts exclusive authority to vacate county roads and the four-year statute. They relate to different things, or at least, to different methods of accomplishing the same thing: the former to the exercise of the power of vacation by an official body in the manner prescribed by statute, the latter to vacation by lapse of time, and then only in the case of roads which had never been opened. Had the intention of the 1860 Act been to direct the county courts to vacate a road which had not been opened for two years, the natural place for the provi-

sion would have been in section 1, where the authority to vacate is given to the county court. Instead, the provision became section 37 of that Act.

Counsel for defendants invokes the rule that subsequent legislation may be looked to for the purpose of discovering the intent of the original act, and argues that the 1903 Act, by which, among other things, the four-year statute was repealed, aids their contention because that Act makes changes in the procedure for vacating county roads. We are not told, and we are unable to discern, in what way these provisions throw light on the question. It may be added, however, that if any evidence of legislative intent can be found in the 1903 Act it is contained in section 55, above quoted, which, in part, provides that the right of counties "to open public roads shall not be extinguished by any adverse possession, however long continued." It would seem that this provision conflicts with the theory of the four-year statute and that the repeal of the latter became necessary in order to remove the inconsistency. There would, of course, be no conflict if the four-year statute was not intended to provide for the vacation of an unopened road by the passage of time.

Furthermore, amendments of section 55 of the 1903 Act are pertinent. By Oregon Laws 1905, Chapter 224, it was provided:

"* * * that the county court of the proper county may order the vacation of any road or part thereof in such county upon the application of any person over whose lands such road may have been located, when it shall be made to appear from such application that such road has not been used for vehicles for a period of five years."

This provision, as subsequently amended, is now found in ORS 368.620. Its significance lies in the fact that

when the Legislature intended to vest in the county court the authority to vacate a road which had remained unopened for a stated period it expressly so provided and prescribed the procedure to be followed.

We conclude that the part of Nice Road which passes over plaintiffs' property has been vacated and that plaintiffs are entitled to a declaration that they hold their property free from the claim of the defendants or anyone else arising out of the establishment of such road.

In view of this conclusion, we neither express nor intimate any opinion upon a further contention of the plaintiffs based upon the fact that what is now plaintiffs' land was once a platted townsite which was later vacated, the argument being that vacation of the townsite brought about vacation of the road.

The decree is affirmed.