THOMAS J. BARKER v. THE BOARD OF COMMISSIONERS OF WYANDOTTE COUNTY et al.

1. COUNTY ROADS — Improvement — Power of County Board. Under chapter 214, Laws of 1887, "An act providing for the improvement of county roads," the county board has no power to order the improvement of a strip of ground laid out and intended as a street through land platted into blocks and lots, that had never been used or traveled as a road, and that never had been regularly laid out as a road in accordance with the provisions of the general road law.

2. ———— Not a County Road. The board of county commissioners has no power to declare by resolution a strip of ground laid out and intended for a street or road through land platted into blocks and lots to be a county road.

3. ———— Strip of Land, Not Made a County Road by Dedication. A dedication to the county by the land-owners on each side, of land sufficient for the purposes of a road, and an acceptance thereof by the board of county commissioners, accompanied by their declaration that the land dedicated shall constitute a county road, is in disregard of the proceedings prescribed by statute concerning roads and highways, and does not make the strip of land dedicated a county road, or a regularly laid out road. (Oliphant v. Comm'rs of Atchison Co., 18 Kas. 386, cited and followed.)

4. ——— *Width of Improvement.* Under chapter 214, Laws of 1887, "An act providing for the improvement of county roads," the county board has no power to order a regularly laid out road to be improved to a greater width than that established by the proceedings under the general road law, by which the road in question was laid out and opened.

5. SIDEWALKS *Alongside of County Road.* Under chapter 214, Laws of 1887, "An act providing for the improvement of county roads," the board of county commissioners has no power to order or contract for sidewalks fourteen feet wide on each side to be built along a regularly laid out county road.

6. TAX-PAYER, *Not Estopped.* A tax-payer is not estopped from asserting a jurisdictional defect in assessment proceedings, when he had no knowledge of the defect at the time the proceedings were instituted, nor until after the work had been commenced, nor until after the improvement had been completed.

*Error from Wyandotte District Court.*

ACTION by *Barker* to restrain the collection of certain taxes. The facts are substantially stated in the opinion.

*Hutchings & Keplinger,* for plaintiff in error.

*J. B. Scroggs, J. O. Fife, A. L. Berger,* and *Winfield Freeman,* for defendants in error.

Opinion by SIMPSON, C.: This is an action brought under § 253 of the code by the plaintiff, Thomas J. Barker, against the county commissioners, clerk and treasurer of Wyandotte county, to enjoin the collection of certain taxes and special assessments levied upon plaintiff's land by pretended authority of chapter 214 of the Laws of 1887, being an act entitled "An act providing for the improvement of county roads." The facts, as disclosed by the pleadings, evidence, and findings, are substantially as follows: The plaintiff, Thomas J. Barker, is the owner of a tract of land situated in the suburbs of Kansas City, but beyond the limits thereof. This land abuts upon Quindaro boulevard, a street that runs along its northern boundary. Lying west of plaintiff's land, in the order mentioned below, and running parallel with its western boundary, are Seventh, Eighth, Ninth and Tenth streets. Lying east

of plaintiff's land, in the order mentioned below, and running parallel with its eastern boundary, are Sixth, Hallock, Fifth, Thompson, Fourth, Walnut and Third streets. The plaintiff's land is within one-half mile of all of these streets, and the county commissioners, by pretended authority of chapter 214 of the Laws of 1887, undertook to improve Quindaro boulevard, Third street, Fifth street, and Tenth street, by grading and paving them with cedar blocks, and to impose one-third of the cost of such improvement upon the tax-payers of the county by general taxation, and to charge the other two-thirds as a special assessment upon plaintiff's land, as provided in said road-improvement law. This action was brought to enjoin the collection of said general tax, and also the collection of said special assessment, on the ground of various irregularities in the proceedings, and because the said chapter 214 of the Laws of 1887 is unconstitutional. Upon the trial, the district court granted the injunction in the matter of the Quindaro boulevard, but denied it as to Third, Fifth and Tenth streets. This petition in error is brought by the plaintiff to reverse the judgment of the district court denying the injunction in the matter of Third, Fifth and Tenth streets, and the defendants have also filed a petition in error to reverse the judgment granting the injunction in the matter of the Quindaro boulevard.

It is claimed that chapter 214 of the Laws of 1887 is unconstitutional: First, because it attempts to delegate legislative power to the petitioners, and confer upon them the absolute and arbitrary power to levy taxes and special assessments on the property of others; second, the road-improvement law is unconstitutional because it does not provide "a uniform and equal rate of assessment and taxation;" third, the act in question is in violation of § 15 of the bill of rights; fourth, it is not within the constitutional right of the legislature to confer upon counties and other *quasi* corporations the power to levy special assessments for local improvements, much less to confer that power upon a class of "resident land-holders;" fifth,

the act is in violation of the fourteenth amendment to the federal constitution.

In addition to the constitutional objection, it is urged that the proceedings are void for the following judicial defects and irregularities: As to Quindaro boulevard: First, the petition is not signed by a majority of the resident land-holders as required by § 1 of the act; second, the county surveyor, in making the map of the taxing district, as required by § 3 of the act, omitted several tracts of land within the half-mile limit; third, the county surveyor, in making the profile and specifications for the improvement, as required by § 3 of the act, wholly disregarded the petition, and specified a different improvement from that prayed for; fourth, one of the road commissioners did not take the oath required by § 5 of the act; fifth, no notice was given of the time and place of making the apportionment.

As to Tenth street: First, at the time the petition was presented, Tenth street did not in fact exist; second, the apportionment was made and delivered to the county clerk before the day those interested had been notified to appear and make their complaints; third, the apportionment was not signed or authenticated by the commissioners, and the record of their proceedings was not kept and filed with the county clerk, as required by § 7 of the act; fourth, the omission of a cemetery in making the apportionment.

As to Third street: The same irregularities occur as in the Tenth street proceedings.

As to Fifth street: The same infirmities exist in the proceedings as to this street as in Third and Tenth streets, except that Fifth street was a "regularly laid out county road" to a width of forty feet, the same being improved, however, to a greater width. The petition for the improvement of this street fails to state "the time for which assessments in payment thereof are to be made," as required by § 2 of the act. In addition to curbing, grading, and paving on a concrete base, the improvements of Fifth street also included the construction of sidewalks fourteen feet wide on both sides of the street.

The plaintiff's land had already been charged with three of these road-tax assessments, for Quindaro, Third and Tenth streets, and was, therefore, expressly exempted by § 8 of the act from further burdens.

At the September term, 1889, the case was tried by the court, and the following findings of fact and conclusions of law were made:

"FINDINGS OF FACT.

"1. This action was begun November 10, 1888, to restrain the collection of taxes for special improvements in grading and paving Quindaro boulevard, a county road, Ninth, Fifth, and Third streets, in Wyandotte county, made under the act providing for the improvement of county roads (chapter 214 of the Laws of 1887), and which were made in 1888, and fully completed, as follows: Quindaro boulevard, June 14, 1888; Ninth, Fifth and Third streets, about October 18, 1888. The assessments had been made and apportioned, and the amounts entered upon the tax-rolls of the county, and the county treasurer was proceeding to collect said taxes in the same manner as other taxes, when this action was instituted.

"2. The petition for the improvement of Quindaro boulevard was, on the 3d day of June, 1887, presented to the board of county commissioners of said county, and upon presentation of such petition, the commissioners ordered a survey, map, and profile and specifications to be made and filed by the county surveyor, which were all made and attached together, properly authenticated by the signature of the county surveyor; and the map and profile offered in evidence are the ones and only ones made by the county surveyor, and by him filed with the board of county commissioners, relating to said Quindaro boulevard improvement.

"3. Afterward the county commissioners appointed S. S. Sharpe, G. W. Bishop and R. M. Gray commissioners to take charge of said improvement. On January 8, 1888, said Sharpe resigned, he having been in the meantime elected county commissioner, and W. E. Connelley was appointed by the commissioners in his place, and afterward Bishop and said Connelley resigned, and the county commissioners appointed T. L. Higgins and James Squires in their places.

"4. Said commissioners were all properly qualified, except G. W. Bishop, who resigned before any considerable portion of the work of said improvement was begun.

"5. The plaintiff lived upon his land just south of the Quindaro boulevard, and his land abuts thereon. He was residing at his said home all the time the improvements were being made upon all the streets mentioned, and was thoroughly familiar with the manner in which the construction of said improvement 'was carried on, and knew that his land was within the half-mile limit, and would be assessed to pay for such improvement under said law of 1887.

"6. There were within the half-mile limit between the termini mentioned in the petition, along said Quindaro boulevard, twenty-one resident land-holders at the time of the presentation of the petition for the improvement of the said road. Only five of said resident land-holders signed the petition which was presented to the board of county commissioners, and upon which said board acted in ordering said improvement to be made and constructing the same.

"7. The petition for the improvement of Quindaro boulevard was presented to plaintiff for signature, but he did not sign the same; and it nowhere appears in evidence that he knew who did sign it, or that it was not signed by a majority of the resident land-holders within that territory taxed, until after said improvement was completed.

"8. The map filed by the county surveyor included a triangular strip of ground on the south side of the road improved, at its junction with Fifth street, which was not within the half-mile limit, and excluded a similar tract on the north side of said Quindaro road at the same junction, which was within the half-mile limit.

"9. The map also excluded a small tract of land which was within the half-mile limit and lying south of the road, in a triangular form, and at that time within the city limits of Kansas City, as appears from the map; and also excluded a piece of land of about forty acres, used as a cemetery, and marked 'Woodlawn,' lying within said limits; and the commissioners on each of the improvements mentioned excluded said last-mentioned tract in making up their apportionments.

"10. It does not appear that the plaintiff knew what lands were included or excluded from said map.

"11. The profile filed by the county surveyor showed the grade line of the road, and the commissioners in making the improvement made some slight deviations from such grade line, but such deviations did not in any manner injure the road, and to some extent reduced the cost of the improvement.

Whatever change was made was at the request of the plaintiff, Barker.

"12. The contract for the work was made by the commissioners for a foundation of one-inch cypress plank, and the work was constructed with one-inch cypress plank foundation.

"13. Plaintiff knew what the petition called for, and also the kind of plank that was being used during all the work from the beginning.

"14. The precise day upon which the road commissioners made their apportionment does not appear from the evidence, but upon June 14, 1888, they caused to be published a notice, of which the following is a copy:

"'The board appointed to assess the benefits to property for grading and blocking of Quindaro boulevard have made their apportionment, and will meet the property-owners interested at the office of the county clerk, on Monday, Tuesday, and Wednesday, June 18th, 19th, and 20th, at 9 A. M.     [Signed]     R. M. GRAY, *Chairman.*
T. L. HIGGINS, *Secretary.*'

"Which notice was published for one week in the official county paper, and is the only notice shown by the evidence to have been given by the said commissioners either before or after making their apportionment. Upon June 18, 1888, the said commissioners met, and their minutes show the following entry:

"'JUNE 18, 1888.—The board having finished the apportionment of benefits, and having advertised the same in the official county paper, met, as per said notice, as a board of equalization, and to hear complaints, if any are to be made, from property-owners, and after remaining in session all day, adjourned until to-morrow, June 19th.
[Signed]     T. L. HIGGINS, *Secretary,*
R. M. GRAY, *Chairman.*'

"Said board were in session for the purposes mentioned in the foregoing entry each day thereafter until June 23d following, when they adjourned finally as a board, and the same day filed their report with the county clerk, together with all books and papers possessed by them relative to said improvement. Each day's entry in the minutes of their proceedings was signed by the chairman and secretary, and the last by all the board, as was also a paper delivered to the county clerk, which purported to be the final action of the board.

"15. The improvement upon Quindaro boulevard was well constructed and of good material, and was of great value to the property-owners within the half-mile limit, and enhanced the value of all such lands to an amount greater than the tax assessed against it for such improvement.

"16. The petitions for the improvement of Ninth and Third

streets were in due form, and all the preliminary steps of surveys, maps and specifications were regularly ordered and filed, and Henry Horstman, Henry Swingley and John Adams were duly appointed and sworn as commissioners to take charge of said improvements.

"17. The work was begun about ——— —, 1888, and completed about October 18, 1888.

"18. The work upon the improvements was all well done and materials used first class.

"19. The commissioners kept full minutes of all their proceedings, but by accident the book in which such proceedings were kept was mutilated, and only a few pages thereof preserved and produced in court. The book of apportionments and papers offered in evidence are those kept and made by the commissioners.

"20. The only notices given to the public or property-owners along the line of said improvements, shown by the evidence to have been given by the commissioners either before or after their apportionments, of the cost of such improvements, were dated October 18, 1888, and were in words and figures as follows:

"'THIRD-STREET NOTICE.—The road commissioners on North Third-street county road, having made apportionment of the cost of improving said road, will meet at the office of the county clerk of Wyandotte county, Kansas, in Kansas City, in said county, on Monday, Oct. 29, 1888, and continue in session until Wednesday, Oct. 31, to hear any complaints from property-owners who may be taxed for the payment of said improvements.            HENRY HORSTMAN,
                                    H. S. SWINGLEY,
                                    JOHN ADAMS,
                                        *Commissioners.*'

"'NINTH STREET NOTICE.—The road commissioners on Ninth-street county road, having made apportionment of the cost of improving said road, will meet at the office of the county clerk of Wyandotte county, Kansas, in Kansas City, in said county, on Monday, Oct. 29, 1888, and continue in session until Wednesday, Oct. 31, to hear any complaints from property-owners who may be taxed for the payment of such improvements.            HENRY HORSTMAN,
                                    H. S. SWINGLEY,
                                    JOHN ADAMS,
                                        *Commissioners.*'

"Said notices were published for two weeks only, on Oct. 18 and 25, 1888.

"21. The report and apportionment made by the commissioners were duly filed, and on October 31, 1888, the plaintiff filed with the county clerk a paper which was called an appeal from said report and protest against any tax against his property for said improvements, but no appeal was ever perfected

by him, and he never made any further appearance before the county board in reference to the matter. The commissioners docketed the protest as an appeal, but no further order was ever asked or made in relation thereto.

"22. On November 1, 1888, the tax-roll with the cost of said improvements so apportioned, including the assessment on plaintiff's land, was by the county clerk delivered to the county treasurer for collection.

"23. And at the time of the presentation of the petition for the improvement of said Third and Ninth streets, those portions of them petitioned to be improved were not and never had been county roads.

"24. One portion of Ninth and all of Third street had been laid out as streets through certain lands platted by the owners, but had not been used or traveled as roads, while another portion of Ninth street had never been opened in any way, or dedicated as a street or laid out or traveled, at the time the petition was filed; but in June, 1888, the owner of the land executed a deed therefor to the county.

"25. No petition of householders for opening said road was filed, no viewers were appointed, or reports of utility filed, and no proceedings for laying out said Ninth and Third streets as county roads were had prior to the filing of the petitions for their improvement, but the commissioners, two or three months after the filing of the petitions, by resolution of the board, declared the said streets to be county roads.

"26. On April 11, 1888, and before the said improvements were completed, the boundaries of Kansas City, Kansas, were so extended as to bring all that part of Ninth and Third streets described in the petition for improvement within the city limits, and the name of said Ninth street was changed to 'Tenth street.'

"27. The plaintiff lives and his land lies just south of the Quindaro boulevard, and between the improvement on Ninth street and that on Fifth street; and other streets intervene between plaintiff's land and Third and Ninth streets.

"28. His (plaintiff's) land does not anywhere abut upon said Ninth or Third streets, but the improvements were and are of great value to the property of the plaintiff, and he has received benefits therefrom equal to and greater than the cost of such improvements taxed to him, and different from those to the general public.

"29. The plaintiff, living in the immediate vicinity, at all

44 — 45 KAS.

times knew that said Ninth and Third streets never had been county roads up to the time of the petitions for their improvement; and he also at all times knew that the improvements were being made under the said law of 1887, and that his land was within the half-mile limit, and would be assessed with its proportion to the cost of such improvements.

"30. Fifth street, where improved, was regularly laid out as a county road, and had been traveled as such for many years prior to the filing of the petition for its improvement.

"31. The same commissioners were appointed and qualified upon the improvement of Fifth street as upon Third ·and Ninth streets, and the work done was fully up to contract and a valuable and desirable improvement, and was completed about October 18, 1888.

"32. The report of the commissioners as to the Fifth-street improvement was filed upon the same day as those upon Third and Ninth streets. The tax-roll was delivered to the treas- urer at the same time, and said street was brought within the new boundaries of Kansas City on April 11, 1888, and before the work was fully completed.

"33. The commissioners gave only one notice, so far as the evidence shows, either before or after making their apportionment, and that was in words and figures as follows:

"'FIFTH-STREET NOTICE.—The road commissioners on Fifth street county road, having made apportionment of the cost of improving said road, will meet at the office of the county clerk of Wyandotte county, Kansas, in Kansas City, in said county, on Monday, Oct. 29, 1888, and continue in session until Wednesday, Oct. 31, to hear any complaints from property-owners who may be taxed for the payment of said improvement.      [Signed]      HENRY HORSTMAN,
                                                    H. S. SWINGLEY,
"'Oct. 18, 1888.'                                   JOHN ADAMS,
                                                    Commissioners.'

"This notice was published for two weeks only, on October 18 and 25, 1888.

"34. On October 31, the plaintiff filed a paper named therein an appeal from the report of the commissioners as to Fifth street, but no appeal was perfected by him, and he at no time asked any order from the county commissioners to be made in relation to the assessment against his land, and no order ever has been made therein; and while the county board docketed such protest as an appeal, it was never by either party thereafter treated as such.

"35. None of the lands of the plaintiff abut upon Fifth street, and a street intervenes between the land of plaintiff and said street, but the land of plaintiff has been increased in

value by said Fifth street improvement, and has derived benefits therefrom different from the general public and to an amount greater than the cost of the improvement taxed to him.

"36. By reason of the improvement of the boulevard, Tenth, Fifth and Third streets, all that belt of country lying immediately south of the boulevard and between Ninth and Third streets, in which tract the land of plaintiff lies, has been made easy of access upon paved streets, has been greatly enhanced in value, and since said improvements were made has been more rapidly developed than any portion of Kansas City, owing largely to such improvements.

"37. The petition filed for the improvement of Fifth street was properly signed, and was regular in form, except that it did not state the time for which assessments in payment of the improvement were to be made. The plaintiff saw and knew the contents of said petition before the improvement thereunder was begun.

"38. The plaintiff was at all times fully aware of the work of improvement upon said street being done, during the time it was progressing, and the manner of doing the same, and that his land was within the half-mile limit, and would be assessed to pay for such improvement."

"CONCLUSIONS OF LAW.

"1. The petition for improvement of Quindaro boulevard was void, and conferred no jurisdiction upon the board of county commissioners to make the improvement.

"2. No sufficient facts have been shown to create an estoppel as to plaintiff.

"3. The temporary injunction should be made perpetual as to the tax for the improvement upon Quindaro boulevard.

"4. Third and Tenth streets were not county roads when the petition was filed, and never have been, and the commissioners had no jurisdiction to order the improvement; but the plaintiff by reason of the facts shown in evidence, is estopped to set up the illegality of the tax, and the temporary injunction is, as to the tax for both of those improvements, dissolved.

"5. The Fifth street petition was irregular, but not void, and conferred jurisdiction upon the board of commissioners to order the work.

"6. The plaintiff, having knowledge of the defect in the petition and other facts shown in the evidence, is estopped from setting up such irregularity at this time, and the tempo-

rary injunction is dissolved as to the assessment for the Fifth street improvement."

We deem it necessary in the disposition of these cases to consider but few of the many questions raised and discussed by counsel for the plaintiff in error.    Three cases have been considered together — those of *Comm'rs of Wyandotte Co. v. Barker*, and *Stewart v. Comm'rs of Wyandotte Co.*, post, embracing most, if not all, of the questions involved in this case.   The record is in an unsatisfactory state.   While it recites that it contains all the evidence, the various maps made by the county surveyor of the respective taxing districts are not contained in the record, although it recites that they were offered and received in evidence.   This omission precludes us from having any intelligent knowledge of the various localities referred to in the record and briefs of counsel.

The various questions discussed and determined in these cases all arise about the true intent and construction of the provisions of an act of the legislature of 1887, entitled "An act providing for the improvement of county roads."   In the first section of the act provision is made for the commencement of proceedings to improve "any regularly laid out road." The expression in the title, and the words quoted in the first section, make it clear that the true intent and meaning of the act was to provide for the improvement of that class of roads that are established under the provisions of the general law of the state concerning highways as county roads.   The roads, then, sought to be improved under this act must be regularly laid out county roads.   There is no possible construction that can be given to this act to make it include within its provisions streets, or any portion thereof, in a city of the first class, or any other class of roads than the class specifically mentioned in the act.   We have general laws providing for the organization and control of cities of the first class, whereby the most ample power is conferred upon the corporate authorities to make the most elaborate improvements of its streets. The improvement authorized by the act under consideration is that of a regularly laid out county road entirely outside of

the limits of any city of the first class. If any portion of the road intended to be improved lies within a city of the first class, this act has no application whatever to this portion. These remarks are deemed necessary, because, in the absence of the county surveyor's maps, it seems that probably, when some of these proceedings were instituted, or certainly soon thereafter, some portions of the roads were in fact streets in the city, so called in the record, and so designated in the findings of the trial court. In this case, as in the case of *Comm'rs of Shawnee Co. v. The State ex rel.*, 42 Kas. 327, there is a very vigorous assault on the constitutionality of the act, but as there are other controlling questions that in our judgment are decisive of this controversy, it is not necessary to consider the question of its constitutional validity. That part of the judgment sought to be reversed by this proceeding in error is the findings of fact and conclusions of law with reference to the improvement of Tenth, Third and Fifth streets.

I. As to Tenth street: This street was originally called "Ninth" street, but was changed to "Tenth" by the city council of Kansas City, the boundaries of the city having been extended so as to include it before the improvements were completed. According to the twenty-third and the twenty-fourth special findings of the trial court, that portion of Ninth street petitioned to be improved was not and never had been a county road. A part of Ninth street had been laid out as a *street* through certain lands platted by the owners, but had not been used or traveled as a road; while another part had never been opened in any way, or dedicated as a street, or laid out or traveled at the time the petition was filed; but in June, 1888, more than nine months after the petition was presented and the improvement ordered, the owners of the land through which the street was located executed a deed of the street to the county. No petition of householders for opening said road was filed; no viewers were appointed, or reports of utility filed; and no proceedings for laying out said Ninth street as a county road were had prior to the time of the filing of the petition for its improvement; but the county commissioners,

two or three months after the filing of the petitions, by reso-
lution of the board, declared said street to be a county road.

We have already said that this law only authorizes the
improvement of county roads regularly laid out. The road
sought to be improved must be, at or before the presentation
of the petition, a regularly laid out county road,
in order to confer power to order the improve-
ment. It is not enough that, after the petition
had been presented, the improvement ordered,
and the work commenced, it had then been declared by reso-
lution of the county board a county road. If the county
board had power to so declare, it would not meet the positive
requirements of the act; but the board of county
commissioners has no power to establish high-
ways by resolutions. (*Noffzigger v. McAllister*, 12 Kas. 315;
*Comm'rs of Wabaunsee Co. v. Muhlenbacker*, 18 id. 129; *Shaffer
v. Weech*, 34 id. 595.) So that, neither at the time the petition
for improvement was presented, nor during the continuance
of the work of improvement, was Tenth street a county road,
or a regularly laid out road. This is conclusive against the
power of the board of county commissioners to consider the
petition or order the improvement. But the court finds that
by reason of the plaintiff's land being in the vicinity of the
improvement; and he residing thereon; and that the improve-
ments were and are of great value to the property; and that
he has received benefits therefrom greater than the cost of im-
provement taxed to him, and different from the general pub-
lic; and that he knew that Ninth street was not a county road
and never had been up to the time of the filing of the petition;
and that he knew that the improvements were being made
under the law of 1887; and that his land was within the half-
mile limit and would be assessed with its proportionate share
of the cost of the improvement—that by all these facts he is
estopped from asserting that Ninth street was not a county
road. It is said in reply to this, and very truthfully said, too,
so far as many of these findings are concerned, that there is
absolutely no evidence to sustain them. There is evidence

1. County roads
—improve-
ment—power
of county
board.

2. Not a county
road.

tending to show that the land of Barker is in the vicinity of this street; that he has resided thereon for many years; that the improvement of the street was of some value to his property; that he has received benefits therefrom; that he knew that the improvements were being made under the law of 1887; and that his land was within the half-mile limit; but apart from the nearness of the improvement to his land and his long residence thereon, there is no fact shown or attempted to be shown from which any inference could possibly be drawn that he knew that Tenth street was not a county road. The proof of knowledge ought to be reasonably clear and strong before it is adjudged that he is estopped by it. We think that there is no evidence to sustain the finding of knowledge. If there was, it is hardly free from doubt, under the case of *City of Leavenworth v. Laing*, 6 Kas. 274, that Barker is not estopped from asserting the jurisdictional defect that it was not a county road that was being improved. The cited case is very like this one, the similarity in facts is strong, and in principle very great. In that case, Laing was a resident of the city, knew that his land was being graded, and made no objection thereto. It appears that the grading was of great benefit to him, but no street or road was ever laid out or dedicated through his land. He enjoined the collection of an illegal assessment, as is done in this case. Laing knew that there was no road or street laid out through his land. There the proof of knowledge was positive, direct, and uncontroverted. Here a fact is found from which an inference of knowledge might arise. This court held that Laing, with positive knowledge of the jurisdictional defect, was not estopped, and following that decision, with a belief that it is the true rule in cases of this character, we now say that Barker is not estopped. Whatever may be said about irregularities of all kinds and non-jurisdictional defects, we believe that it is not within the authority of any person or party in interest, by their action, or silence, or express assent, to confer a power upon tribunals of limited and special jurisdiction that the law has expressly withheld.

II. As to Third street: The same state of facts exists with reference to this street that was found as to Tenth. It never was a county road, or a regularly laid out road. All of this street had been laid out as a *street* through certain lands platted by the owners, but had not been used or traveled as a road. The owners of the land executed a deed of the street to the county. The street was declared a county road by resolution of the county board. The boundaries of the city of Kansas City were extended so as to include the improved portion of the street before such improvements were completed. The questions, therefore, as to this street (there being the same findings as to residence and knowledge) are the same as discussed and decided above with reference to Tenth street.

3. Strip of land, not made a county road by dedication.

III. As to Fifth street: The finding of the trial court is, that this street, where improved, was regularly laid out as a county road, and had been traveled as such many years prior to the presentation of the petition for improvement. The petition omitted one of the essential requirements prescribed by the second section of the act, in this: it did not state the time for which the assessments for the payment of the improvement are to be made. While Fifth street was a county road, it was only forty feet wide; it was improved to the width of forty-two feet a part of the way, and fifty-two feet the remainder, with a sidewalk fourteen feet wide on each side of the improved way. In view of other fatal defects, it is not now necessary to pass upon the question as to whether or not the omission in the petition to state "the time for which assessments in payment thereof are to be made," as required by the second section of the act, is jurisdictional, or a mere irregularity that does not deprive the county board of the power to act. The other enumerated defects are such that they cannot be sustained under any friendly construction of the provisions of this statute.

The road might be improved to its full width in accordance with a fair construction of the act, taking neither economy nor utility into account, but when it is stretched beyond

the boundaries of the road on either side to the extent of two or ten feet, such a departure from its width as regularly laid out and declared is not only without authority, express or implied, but is so clearly void that it is almost incredible that such an official tribunal as the board of county commissioners would have ever conceived the idea or tolerated a suggestion of it.  But when, in addition to an arbitrary improvement in excess of the legally-established width of the road, the commissioners add the cost of sidewalks on each side fourteen feet wide, all pretense of compliance with the avowed purpose of the law is gone.  They convert a road forty feet wide — a width established under the provisions of the general road law — into one seventy feet wide a portion of its length, and the remainder eighty feet wide, by an unauthorized contract for improvement.  These things are wholly unauthorized by the statute and are absolutely without power and authority, and are not binding on the plaintiff in error, and in the very nature and essence of things ought never to be permitted to be successfully enforced by any court.

*4. Width of improvement.*

*5. Sidewalks alongside of county road.*

The same facts are urged as an estoppel against the plaintiff in error as in the other two streets.  Some of these facts relied upon to estop him are sustained by evidence, the others are not.  We have considered these findings in the Tenth street matter — they apply to all three of the streets taken together, and are not made specific as to each street.  These attempts to exercise powers not granted in terms or fairly implied by the act render the assessments levied on the land of the plaintiff in error for the improvement of Fifth street void, and there are no sufficient facts pleaded or found to estop him from asserting the jurisdictional defects enumerated.  It may be said that, as Fifth street was found to be a regularly laid out and traveled road, the cost of the improvement to the width of forty feet is valid, and the plaintiff in error ought to have tendered or paid the tax on the legal width before he can ask to have the illegal part restrained from collection.  If the tax had been so itemized and segre-

*6. Tax-payer, not estopped.*

gated so that the defendant in error, or the officers, could by computation arrive at the amount assessed for the improvement of the forty feet in width, this ought to and would have been required. But the record, so far as it shows about the assessments for the improvement of Fifth street, recites an aggregate sum of $940.75 assessed against the land of the plaintiff in error, and it does not appear that the plaintiff had or could have had any means by which to determine what was the amount of legal taxes, if any there be, that was assessed against his land for the improvement of the legal width of the Fifth street road.

We recommend that the judgment of the district court, as to the assessments for the improvement of Third, Fifth and Tenth streets, be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.