THE BOARD OF COMMISSIONERS OF WYANDOTTE COUNTY
*et al.* v. W. W. ARNOLD *et al.*

1. SUPREME COURT — *Will Review What.* The supreme court will review the form and substance of a final judgment, and correct all substantial errors therein, whether the judgment has been excepted to in any form or not.

2. CONCLUSIONS OF FACT CONTROL — *Judgment Acordingly.* If, upon the trial, the court, at the request of the parties, states in writing the conclusions of fact separately from the conclusions of law, and the conclusions of fact are inconsistent with the conclusions of law and the judgment rendered thereon, the supreme court may direct judgment upon the conclusions of fact found, although no exceptions are taken to the conclusions of law. The conclusions of fact control, and judgment must be given accordingly.

3. CASES, *Followed.* As to all of the land-owners, referred to in this case, who voluntarily invoked for their own benefit the provisions of chapter 214, Laws of 1887, and signed the petition presented to the board of county commissioners, the case of *Stewart v. Comm'rs of Wyandotte Co.*, 45 Kas. 708, is applicable, and is therefore followed. As to the land-owners who did not sign any petition, or request any improvement ordered by the board of county commissioners, the cases of *Barker v. Comm'rs of Wyandotte Co.*, 45 Kas. 681, and *Comm'rs of Wyandotte Co. v. Barker*, 45 id. 699, are followed, and therefore, as to them, the injunction allowed against the collection of the assessments complained of will be sustained.

*Error from Wyandotte Court of Common Pleas.*

W. W. ARNOLD and about 75 other land-owners commenced this action to enjoin special taxes charged upon their respective lands for the improvement of the Southwest boulevard, a street in the city of Rosedale, under the authority of chapter 214, Laws of 1887. (Gen. Stat. of 1889, ¶¶ 5521–5531.) The case was tried in the court of common pleas of Wyandotte county, and by request of the parties the conclusions of fact found were stated separately from the conclusions of law. As conclusions of fact the court found:

"1. That prior to the incorporation of the town of Rosedale, a county road known as the 'S. B. Bell road' was laid out and established, which road was of the width of 60 feet.

"2. There is no county road known as the 'Southwest boulevard,' but there is a public highway of that name, which, at the time of the presentation of the petition to the board of county commissioners mentioned in the petition, was and still is wholly within the corporate limits of the city of Rosedale, which highway is 100 feet in width.

"3. The S. B. Bell road and the Southwest boulevard have the same termini, and lie in the same general direction, and for a considerable distance some part of the original S. B. Bell road lies within the ground occupied by the boulevard, and for a considerable distance the S. B. Bell road as laid out is wholly outside of the Southwest boulevard, and in some places is as much as nine feet therefrom.

"4. Under the proceedings based on the petition presented to the board of county commissioners, the Southwest boulevard was improved to the full width of 100 feet.

"5. The plaintiffs are the owners of the lands mentioned in the petition as belonging to them respectively, and the same lie within one-half mile of the Southwest boulevard.

"6. Two-thirds of the costs of the improvement were apportioned against the real estate lying within the half-mile limit of the boulevard, and the remainder of such costs was charged against the property in the county generally, and all of the costs have been entered upon the tax-rolls of the county, and the proper officers are proceeding to, and unless restrained will, collect the same from the property of plaintiffs in the same manner as taxes are collected generally.

"7. The following-named persons, who are plaintiffs in the above-entitled action, to wit, W. H. Nichols, John Dueboeck, James Stalwart, S. B. Bell, B. Roth, John Christianson, Peter Gaffy, J. Lobner, P. G. Peterson, Richard Fitzgerald, S. S. Ely, Margaret Bell, E. J. Burlingham, E. A. Tompkins, Jacob Schall, William Hampton, Augustus Barnes, George Thomas, John Kemp, P. Classon, Henry Pilgrain, L. H. Rose, T. W. Wright, and Frank Hollingsworth, signed the petition for the improvement of the road in plaintiffs' petition mentioned, and asked for the improvement, which was made under the provisions of chapter 21, Session Laws of 1887; the parties last named, and who are plaintiffs herein, all live contiguous to the road, and so lived in the immediate vicinity of the road so improved during its entire progress. The improvement so made, as requested by the plaintiffs last above-named and signers of the petition, greatly enhances

the value of their property, much in excess of the tax or assessment attempted to be imposed herein.

"8. A majority of the resident land-holders living within one-half mile limit on either side of the road so improved signed a petition for the improvement of the Southwest boulevard, mentioned in plaintiffs' petition, for which the assessment is herein made."

As a conclusion of law, the court found:

"That the plaintiff and the other persons for whom he sues are entitled to a perpetual injunction to restrain the collection of the special taxes so assessed and. levied against their lands, respectively."

Judgment was rendered in favor of the plaintiffs, and against the board of county commissioners of Wyandotte county and the other defendants. They excepted, and bring the case here.

*McGrew & Watson*, and *Morse, King & Morse*, for plaintiffs in error:

The question now is, whether or not the plaintiffs, without reference to their having signed a petition, are estopped by their own action, or by their want of action, from prosecuting their injunction suit to restrain the collection of the taxes levied to pay for the improvements.

If the findings of fact had gone one step further, to the effect that the plaintiffs below had all signed the petition asking that the improvements be made, then, we think, under the reasoning of the court in *Stewart v. Hovey*, 45 Kas. 708, there can be no doubt but that the doctrine of estoppel would form a complete barrier to the proceedings of the plaintiffs. But not signing the petition, are the plaintiffs below estopped? We insist that their failure to act in opposition is as fatal to their claims as would have been their action in favor. Let us look at this question in the light of the surrounding facts. These plaintiffs (and we are now talking of those who did not sign the petition) all owned land and lived along the boulevard — within one-half mile on each side of the road. They knew the law because they must know it. They knew that, if

the boulevard was paved, two-thirds of the cost thereof would be charged up against their lands. They evidently knew that a petition was presented to the board of county commissioners asking for the improvements, because it is not presumable that a paper of that kind could be circulated sufficiently to obtain the signatures of a majority of the resident land-holders living within the district and ·these plaintiffs below be and remain in ignorance of it. They knew the improvements were being made, because they lived near the road and necessarily saw just what was being done. The record does not disclose a sign of objection or a word of protest from any of these gentlemen. Their lands are practically brought into the city by a nicely improved road, always clean and pleasant to drive upon, and greatly enhanced in value. They stand idly by, knowing that it is the purpose of the power making the improvement to charge the cost thereof to their lands. Their purpose and policy is to receive all the benefits and then to refuse to bear any part of the burdens. They should not now be heard in any pleas for equitable relief, because they have not done equity.

For more than two years, from the beginning of these improvements to the filing of the petition, these plaintiffs kept perfectly still, nodding and winking at one another in contemplation of the enjoyment they should find in partaking of the rich fruits that others were cultivating, well knowing that they would be expected to pay for it. But they kept quiet, doubtless fearing that any protest on their part would cause a cessation of the work, and they thereby lose the benefits. These men wanted the improvements made — there can be no doubt of that — but they wanted them, if possible, without cost to them. Thus their breathless silence. *Liebstein v. Mayor of Newark*, 24 N. J. Eq. 200, was an action brought by plaintiff to restrain the city from paying the contractor the full contract price for work done, and from assessing that price upon the complainants, without first making a proper reduction for defective work. It is not claimed that that case is wholly analogous to this, but it seems to us the doctrine

there laid down applies with equal force to this.    There the
work was improperly done, and, so far as the record discloses,
added nothing to the value of plaintiff's property.    Here the
quality of the work was not questioned, only the authority to
do the work, and great additional value was given to the
property by reason of it.    There the plaintiff sought an in-
junction before the work was completed, asking only that the
officer be restrained until a proper deduction had been made
for defects.    Even there the plaintiff was too late, the court
saying:

"Equity, however, will undoubtedly readily afford relief
in such cases as this, when timely application is made to the
court; but such application must be made while the court has
the power to do justice between the parties without injustice
to others.    In such case, the court will restrain the city au-
thorities from paying for the work until the defects shall have
been remedied; or will compel a just deduction, in respect to
such defects, from the contract price, if it be still unpaid, or
from any part of it remaining unpaid, if sufficient for the
purpose; and if not sufficient, then so far as it will go.    But
if the land-owners stand by and permit the city to pay the
contractor, they can have no relief against the assessment.
In such case, their inaction is a ground of estoppel; and by
permitting the city to pay the contract price, they have put
it out of the power of this court to afford relief."

In *Dusenbury v. Mayor of Newark*, 25 N. J. Eq. 295, the
court, referring to other similar cases it had decided, among
them the one cited above, says:

"The complainant's application to this court for relief was
not made until nearly a year and a half after the last pay-
ment was made upon the contract.    For the reasons on which
those decisions were based, the complainants cannot success-
fully invoke the aid of this court in respect either to the neg-
ligence or fraud of the contractor or the city authorities in
the performance of the work."

Thus it is again.    The parties, if they ever had any such
rights as they there sought to enforce, had slept upon them
too long and too peacefully.    They awoke to find they were
estopped, simply because they had accepted the benefits of the·

work, whatever those benefits were, and had made no objection to it, but by their silence had given promise of bearing their share of the burdens. If the plaintiffs there were estopped, with better reasons are they estopped here. They have slept too long while others watched and worked, and should not now be assisted in doing wrong to others.

Especially did said court err in its conclusions of law in reference to the plaintiffs below mentioned in its seventh finding. All of the plaintiffs above named signed the petition asking the county commissioners to improve the Southwest boulevard. These petitioners knew the law under which they were seeking to have the work done. They knew the law was for the improvement of county roads; they knew the Southwest boulevard was not a county road; they knew that the law under which they were proceeding would require them to pay two-thirds of the cost; they knew every liability which that road law of 1887 imposed on them. And yet, knowing all this, they signed a petition to the county commissioners asking that the improvements be made. They got just what they asked for—the improvement of the boulevard; and the result was just what they expected—a great increase in the value of their land. They kept quiet until the work was all done, and then, when asked to pay only two-thirds of the cost of the work, instead of paying it all, these private-spirited gentlemen did what Colonel Hay's Mr. Bludsoe never did— they "flunked." That is to say, not being able to walk out of their own boulevard enterprise, upright and honest, as honorable citizens should do, they try to sneak out backwards through a supposed hole in the fence, or a flaw in the proceedings. Thus we insist there is no equity and no semblance of equity with these petitioning plaintiffs below. Every principle of justice and equity is against them. They have their improved road which has made their property so valuable. They ought to have improved it and paid for it all themselves, instead of paying only the two-thirds that they are now asked to pay, and which they once solemnly agreed in writing that they would pay.

It seems to us that, so far as concerns these plaintiffs below who petitioned for the improvement, it is unnecessary to cite any law further than that announced by this court in the case of *Stewart v. Hovey*, 45 Kas. 708. See, also, *Travis v. Ward*, (Wash.) 25 Pac. Rep. 908; *Andrus v. Board of Police*, (La.) 6 S. Rep. 603; *Dupre v. Board of Police*, (La.) 8 id. 593; *Burlington v. Gilbert*, 31 Iowa, 355; *Kellogg v. Ely*, 15 Ohio St. 64.

*Reed & Reed*, and *Hutchings & Keplinger*, for defendants in error:

1. The record is not sufficient to present any question for review except as to the correctness of the rulings on the admission and rejection of testimony. Upon the trial in the court below, both parties requested that the conclusions of fact found be stated separately from the conclusions of law. The parties had an absolute right to have such special findings made, and it would have been error for the court to refuse to make such findings in writing. Code, § 290; *Briggs v. Egan*, 17 Kas. 589; *A. T. & S. F. Rld. Co. v. Terry*, 28 id. 686.

But after the case, by special request of the plaintiffs in error, has been decided upon special findings, and all of the questions that either party desired to raise have been covered by such findings, neither party requesting other or additional findings, or in any manner intimating that he desired other questions to be presented by the findings or passed upon by the court, and where neither party has taken any exception to the findings of fact or conclusions of law, can one of the parties bring the case to this court and ask that it be determined upon questions which are not covered by the findings, and which have not been passed upon by the court below? We submit that the only method of raising any question concerning the correctness of the conclusions of law is to except to them when announced. Code, §§ 290–300; *Major v. Major*, 2 Kas. 337; *Lacy v. Dunn*, 5 id. 569; *Cruizen v. Smith*, 41 Ind. 288; *Smith v. Davidson*, 45 id. 396; *Midland Rly. Co. v.*

*Dickason*, 29 N. E. Rep. 775, and numerous cases cited in the opinion. And such exception must be assigned as error. *Lewis v. Haas*, 50 Ind. 246; *Wilson v. Fuller*, 9 Kas. 176–193.

A motion for a new trial does not raise any question as to the correctness of the conclusions of law. That the conclusions of law are erroneous, is not a ground for a new trial. Code, § 306; *Osborne v. Young*, 28 Kas. 769; *Montgomery, etc., v. Rock*, 41 Ind. 263. This is exemplified by the uniform practice which obtains in cases where a judgment upon special findings is reversed by this court. No new trial is awarded in such cases, but the court below is directed to enter such judgment upon the findings of fact as the party is entitled to. Code, § 559; *Barker v. Comm'rs of Wyandatte Co.*, 45 Kas. 698; *Gray v. Crockett*, 35 id. 66; *Snyder v. Bell*, 32 id. 232; *Douglass v. Anderson*, 32 id. 350; *Duffitt v. Crozier*, 30 id. 150.

Now, an examination of the petition in error shows that the first 13 assignments of error therein consist wholly of complaints concerning rulings of the court on the admission and rejection of evidence, and the remaining four complain solely of the conclusions of law. We insist that the last four assignments of error, not being based upon any exceptions taken in the court below, nor upon any ground set out in the motion for a new trial, cannot, for the reasons above stated, be considered by an appellate court.

2. The question of estoppel. The four assignments of error, however, which attack the conclusions of law, and which we have shown above do not present any question to this court, because not based upon exceptions taken in the court below, are the ones upon which the counsel for plaintiffs in error base their principal discussion, and upon which they rely for a reversal or modification of the judgment of the court below. The point attempted to be made is, that the defendants in error (plaintiffs below), or at least the 24 plaintiffs below mentioned in the seventh finding of fact, are by their acts, or rather silence, estopped from maintaining the action. The alleged estoppel is not pleaded in the answer, and the seventh

finding of fact, not being within the issues made by the pleadings, is a nullity and should be disregarded. *Brenner v. Bigelow*, 8 Kas. 496. Estoppel, waiver and kindred defenses are not favored, and must be specially pleaded. This rule is tersely stated in *Anderson v. Hubble*, 47 Am. Rep. 400. And see *Dwelling-House Insurance Co. v. Johnson*, 47 Kas. 1; *Gilmore v. Norton*, 10 id. 509; Pom. Code Rem., § 712; *Western Home Insurance Co. v. Thorp*, 48 Kas. 239.

The petition in this case alleges various jurisdictional defects and irregularities in the proceedings that rendered the special taxes invalid. The answer in effect denies that any such irregularities existed. And it is further alleged, that plaintiffs knew of said proceedings and did not object thereto, etc. The very essence of an estoppel in this class of cases is that plaintiff knew of some defect in the proceedings, and with full knowledge thereof acquiesced in or remained silent while the improvement was being made. Elliott, Roads & St. 421; 2 Herm. Estop., § 1062; *Tone v. Columbus*, 39 Ohio St. 302; *Commissioners v. Barker*, 45 Kas. 699.

The estoppel which it is now attempted to build upon the seventh finding of fact was first heard of in the brief of plaintiffs in error in this court. It was not pleaded or proved or passed upon by the court below. Moreover, the seventh finding is gratuitous, and wholly without support in the evidence. There is not a word of evidence anywhere in the record that any of the plaintiffs signed the petition for the improvement of the road.

We also insist that the eighth finding is wholly without support in the evidence. Not a syllable of testimony concerning the petition for the improvement of the street was introduced. The petition was not even mentioned by any witness in the case. The petition itself was introduced, but there was no testimony as to how many resident land-holders there were in the half-mile limits, or as to whether any of them did or did not sign the petition.

Counsel for plaintiffs in error assume, in their brief, that the defendants in error all resided in the vicinity of the South-

west boulevard, and knew of and encouraged the improvement while in progress. This assumption, like the seventh and eighth findings of fact, is unfounded. Many of the plaintiffs were non-residents, who probably never heard of the improvement until called upon to pay the enormous special taxes imposed upon their property in consequence of it, and, so far as the evidence shows, not one of the plaintiffs knew of the improvement until after it was completed, much less had any knowledge of the irregularities in the proceedings, or that the Southwest boulevard was not a county road.

In conclusion, upon this subject of estoppel, we desire to call attention to several assertions of matters of fact in the brief of plaintiffs in error which are wholly without foundation in the record, for, if the attention of the court were not specially directed to them, it might be misled. Now, in their brief we find this assertion: "They (the plaintiffs below) all stood by and witnessed the progress of the work without one word of protest," etc., and in other places in the brief similar assertions are made concerning the property of the plaintiffs being greatly enhanced in value, etc., etc. There is no excuse for such assertions; they are not borne out by the record and are not true in fact.

If, however, this court determines to review the case, though no exceptions were taken in the court below, then we insist it should go behind the findings to the evidence (as was done in *Barker v. Comm'rs of Wyandotte Co.*, 45 Kas. 681–694), and decide the case according to the very right of the parties, as shown by the evidence, regardless of the findings. In so doing, it will be compelled utterly to disregard the seventh finding of fact, because it is absolutely and totally unsupported by any evidence; and said seventh finding being eliminated, there can be no pretense of an estoppel even as against the 24 plaintiffs mentioned in said seventh finding.

See, also, 2 Dill. Mun. Corp. 914–923, and cases cited in notes; *Winn v. Shaw*, 25 Pac. Rep. 968; *Bridge Company v. Comm'rs of Wyandotte Co.*, 10 Kas. 326; *Challiss v. City of Atchison*, 39 id. 276; *Dever v. Junction City*, 45 id. 417.

The opinion of the court was delivered by

HORTON, C. J.: A preliminary question is presented. It is urged that the record is not sufficient to present any question for review. Upon the trial, both parties requested that conclusions of fact be found and stated in writing separately from the conclusions of law. This was done. No exceptions were taken to the findings of fact or conclusions of law. The defendants below, however, filed a motion for a new trial, alleging, among other things, that the decision of the trial court was contrary to law.

"Where the special findings of fact in a jury trial are inconsistent with the general verdict, the former control, and the court must give judgment accordingly." (Civil Code, § 287.)

In a case tried by the court, where special findings of fact are made, the same effect is to be given them as if found by the jury. (*Weil v. Eckard*, 37 Kas. 696.) If a case is tried by the court without a jury, and the findings of the court are not sufficient to sustain the judgment rendered, even if there be no exception, this court may direct judgment upon the special findings. It has been the general practice of this court to review the form and substance of all final judgments, and correct all substantial errors therein, whether the judgment has been excepted to in any form or not. (*Koehler v. Ball*, 2 Kas. 160; *Lender v. Caldwell*, 4 id. 339; *Wilson v. Fuller*, 9 id. 193; *Coburn v. Weed*, 12 id. 182; *Dexter v. Cochran*, 17 id. 447; *Brown v. Tuppeny*, 24 id. 29; *Comm'rs of Wabaunsee Co. v. Muhlenbacker*, 18 id. 129.) Twenty-four of the plaintiffs in this action signed the petition which was presented to the board of county commissioners for the improvement of the road. They all lived contiguous to the road during the entire progress of the work thereon, and the improvement made, as requested, greatly enhanced the value of their property much in excess of the taxes or assessments imposed. As to these parties, the case of *Stewart v. Comm'rs of Wyandotte Co.*, 45 Kas. 708, applies: "A party cannot invite and encourage

19—49 KAS.

a wrong, and then ask a court of equity to protect him by an injunction from the consequences of that wrong." The plaintiffs below who did not sign the petition are not estopped, within the cases of *Barker v. Comm'rs of Wyandotte Co.* 45 Kas. 681, and *Comm'rs of Wyandotte Co. v. Barker*, 45 id. 699.

The Southwest boulevard was not a county road, but was situated within a city, and therefore not subject, under the statute, to the control of the county commissioners. Even if this were not the case, under chapter 214, Laws of 1887, "An act providing for the improvement of county roads," the county board has no power to order a regularly laid out road to be improved to a greater width than that established by the proceedings under the general road law, by which the road in question was laid out and opened. (*Barker v. Comm'rs of Wyandotte Co.*, 45 Kas. 681.)

The judgment of the court of common pleas must be modified. As to all the parties who signed the petition for the improvement, the judgment will be reversed, and, upon the findings of fact, judgment will be entered against them and in favor of the county commissioners and the other defendants below. As to all the parties who did not sign the petition, the judgment will be affirmed. Costs will be adjudged against the parties who signed the petition, and the parties who did not sign will recover their costs.

All the Justices concurring.