## THE BOARD OF COMMISSIONERS OF WYANDOTTE COUNTY *et al.* v. E. D. BROWNE.

HIGHWAY — *Assessment for* — *Remedy of Land-Owner* — *Estoppel.* The mere signing of a petition for the improvement of a road under chapter 214, Laws of 1887, (Gen. Stat. of 1889, ¶ 552,) will not estop a land-owner, who never presented the petition, and never knew that it was fatally defective when presented, or until after all the work was completed, from alleging that a board of county commissioners had no authority to authorize the improvement or cause assessments to be made therefor, when such improvement was made in a manner different from that which the petition requested, and in violation of the provisions of the statute.

*Error from Wyandotte Court of Common Pleas.*

THIS was an action in the court below, brought by *E. D. Browne* against the *Board of County Commissioners* and other officials of Wyandotte county, to enjoin the collection of certain special assessments or taxes charged against his land for the improvement of the Quindaro boulevard, under the authority of chapter 214, Laws of 1887. (Gen. Stat. of 1889, ¶¶ 5521–5531.)

The court stated in writing the conclusions of fact found separately from the conclusions of law.

Among the conclusions of fact found were:

"1. A short time prior to the 3d day of June, 1887, the plaintiff signed a petition for the improvement of the Quindaro road, a copy of which is annexed to plaintiff's petition.

"2. The petition was presented by Martin Stewart to the board of county commissioners of the county of Wyandotte, on the 3d day of June, 1887, and was recorded at length on its journal by the county clerk.

"3. At the time the petition was signed by the plaintiff, and when the same was presented to the commissioners, there were 21 resident land-holders in the district extending one-half mile on both sides of the Quindaro road, and between the terminal points mentioned in the petition, but only five of those resident land-holders signed the petition; so that instead of containing a majority of the resident land-holders, as

required by § 1 of the road-improvement law, it in fact contained less than one-fourth of them.

"4. The plaintiff did not at the time he signed the petition, nor at any other time, authorize any person to present the same to the county commissioners before it had been first signed by a majority of the resident land-holders as required by the road-improvement law, and it was not the intention of plaintiff that the petition should be presented to the county commissioners until after it was signed by a majority of such resident land-holders.

"5. The plaintiff never saw the petition afterwards, and never knew that the petition had not been signed by such majority of resident land-holders until after the improvement of the road had been fully completed, as hereinafter stated.

"6. After the petition had been presented to the board of county commissioners and recorded upon its journal, it was, without the knowledge or consent of plaintiff, altered by changing the word 'two' to 'one,' so that it required the foundation for the pavement to be made of one-inch cypress boards instead of two-inch cypress boards.

"7. That plaintiff never knew of the alteration and change in the petition until after the improvement of the road had been fully completed, as hereinafter stated.

"8. The board of county commissioners, soon after the presentation of the petition, ordered the county surveyor of the county of Wyandotte to make an accurate survey of the Quindaro road, in the petition mentioned, with an estimate of the cost of the improvement, together with specifications for the improvement, and a map showing the several tracts of lands within one-half mile on either side of the proposed improvement.

"9. Pursuant to the order, the county surveyor did make a survey of the road and an estimate of the cost, and specifications for the improvement of the road, but such estimate and specifications provided for one-inch cypress boards for the foundation of the pavement. The surveyor also made a map and profile, but the map omitted a tract of about 160 acres on the south side of the road and within a half-mile thereof, which tract was subdivided into lots and partially improved, and of the value of at least $100,000, which omitted territory was within the limits of the city of Kansas City, Kas.; and the map also omitted another tract of about 15 acres, on the north side of the road, and within a half-mile thereof, which

tract was subdivided into lots and partially improved, and of the value of not less than $50,000, and the last omitted tract was not within the limits of any city.

"10. The plaintiff had no knowledge that the estimate and specifications provided for one-inch cypress boards as the foundation for the pavement, nor that the tracts of land were omitted from the map, until after the improvement of the road had been fully completed, as hereinafter stated.

"11. On the 6th day of July, 1887, and after the surveyor had made the survey, estimates, specifications, map, and profile, the board of county commissioners appointed three road commissioners to take charge of and conduct the improvement in accordance therewith. The commissioners were all properly qualified, except G. W. Bishop, one of them, who failed to take an oath of office, and who resigned before any considerable portion of the work of the improvement was begun, but after the contract was let.

"12. Plaintiff had no knowledge, until after the road was fully completed, that Road Commissioner G. W. Bishop had not subscribed or taken oath."

"15. Plaintiff did not know, until after the improvement was fully completed, that the road commissioners had changed the grade and constructed the improvement upon a different grade than that established by the profile of the surveyor."

"20. The road commissioners in making the apportionment apportioned and charged upon the lands of plaintiff described in his petition the sum of $4,896 as special taxes for improvement of the road, as stated in the petition.

"21. The special taxes were entered upon the tax-roll and delivered to the county treasurer for collection as other taxes, and each year the plaintiff has tendered to the county treasurer and offered to pay all the taxes of every nature charged against his lands except the special taxes for the improvement of the road, which plaintiff has refused to pay; but the treasurer has refused to permit plaintiff to pay his other taxes unless he also paid the special taxes, and has sold plaintiff's lands and issued tax certificates therefor, but no suit was commenced by plaintiff to restrain the collection of the special taxes until the commencement of this action, which was September 4, 1890.

"22. The survey, estimate, specifications, map and profile made by the county surveyor, as hereinbefore stated, were not signed or authenticated by him in any manner.

"23. The road commissioners in making the apportionment adopted the following method, namely: They valued each tract of land and the improvements thereon as the same were valued on the assessment rolls for the preceding year for general taxation, and levied upon all the lands a uniform percentage sufficient to pay the cost of the improvement, without taking into consideration the benefits and damage to each tract of land separately, and the road commissioners in making the apportionment did not take into consideration any benefits to personal property, and did not sign or authenticate their apportionment in any manner."

Thereon the court made the following conclusions of law:

"1. By reason of no petition having been presented to the board of county commissioners signed by a majority of the resident land-holders within one-half mile on both sides of the Quindaro road, the proceedings for the improvement thereof were wholly without jurisdiction, and were and are wholly void.

"2. By reason of the petition for the improvement being changed after it was signed so as to require one-inch cypress boards as the foundation for the pavement, instead of two-inch cypress boards as intended by the plaintiff and others when they signed the petition, and by reason of the estimate and specifications of the surveyor providing for one-inch instead of two-inch cypress boards as such foundation, and by reason of the foundation being constructed of one-inch instead of two-inch cypress boards, the proceedings for the improvement of the road were rendered wholly void as to the plaintiff.

"3. By reason of the county surveyor omitting from the map made by him many tracts of land within the half-mile limits, and by reason of the road commissioners omitting from consideration in making their apportionment the tracts of land and Woodlawn cemetery, and apportioning the entire cost of the improvement upon other tracts of land shown by the map, the proceedings for the improvement of the road were rendered wholly void as to the plaintiff.

"4. By reason of the county surveyor failing to sign or authenticate in any manner his estimate, specifications, map, and profile, and the road commissioners failing to sign or authenticate in any manner their apportionment, the proceedings for the improvement of the road were rendered wholly void as to the plaintiff.

"5. By reason of one of the commissioners not having

taken any oath, the proceedings for the improvement of the road were rendered wholly void as to the plaintiff.

"6. By reason of the road commissioners having changed the grade of the road, and constructed the improvement on a different grade, and contrary to the profile of the county surveyor, the proceedings for the improvement of the road were rendered wholly void as to the plaintiff.

"7. By reason of the road commissioners apportioning the cost of the improvement of the road upon the various tracts of land according to the assessed value of each tract, instead of taking into consideration the benefits and damage to each tract, and apportioning the same according to the benefits to real and personal property within the limits shown by the surveyor's map, the apportionment is wholly void as to the plaintiff.

"8. By reason of the failure of the road commissioners to give plaintiff sufficient notice and an opportunity to be heard, and adjourning *sine die* before the time for appeal had expired, the apportionment is wholly void as to the plaintiff.

"9. Plaintiff is not by reason of having signed the petition, or by any other acts of his shown by the evidence, estopped, but is entitled to a perpetual injunction to restrain the collection of the special taxes so assessed and charged against his lands described in the petition herein."

Judgment was rendered in favor of Browne against the board of county commissioners and the other officials. They excepted to the judgment, and bring the case here.

*McGrew & Watson*, and *Morse, King & Morse*, for plaintiffs in error.

*Hutchings & Keplinger*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: E. D. Browne, the defendant below, signed the petition for the improvement of the road in question, but he did not intend that the petition should be presented to the board of county commissioners until it was signed by a majority of the resident land-holders. At the time he signed, there were 21 resident land-holders in the taxing district. Only five ever signed the petition which was presented.

Browne did not present the petition. The various defects in the petition at the time it was presented, and the changes made in the subsequent proceedings, were not made with his knowledge or consent, and he had no knowledge thereof until after all the work was completed. The mere fact that he signed the petition will not have the effect of estopping him, under the circumstances of this case. Within the cases of *Barker v. Comm'rs of Wyandotte Co.*, 45 Kas. 681, and *Comm'rs of Wyandotte Co. v. Barker*, 45 id. 699, the judgment of the court of common pleas will be affirmed.

All the Justices concurring.